**Louis LeLAURIN, Appellant,**

v.

**FROST NATIONAL BANK OF SAN ANTONIO, as Trustee under the Will of Jack Ammann, Deceased, et al., Appellees.**

**FROST NATIONAL BANK OF SAN ANTONIO, as Trustee under the Will of Jack Ammann, Deceased, Appellant,**

v.

**Louis LeLAURIN et al., Appellees.**

**No. 24779.**

United States Court of Appeals
Fifth Circuit.

March 21, 1968.

Rehearing Denied June 20, 1968.

---

Frank Y. Hill, Jr., San Antonio, Tex., for appellant.

John P. Giles, San Antonio, Tex., for David Ammann.

Joe P. Smyer, San Antonio, Tex, for Mary Jane Ammann.

John R. Locke, San Antonio, Tex., for Frost Nat'l Bank; Kelso, Locke & King, San Antonio, Tex., of counsel.

Before RIVES, GEWIN and THORN-BERRY, Circuit Judges.

RIVES, Circuit Judge:

The appellant attorney initiated this proceeding against the appellee Bank for the recovery of an attorney's fee. While the necessity for litigation over attorney's fees is always regrettable, in this case the courts must settle honest differences of opinion on which the parties have not been able to agree. All of the parties are citizens of Texas. If federal jurisdiction exists, it arises from a Referee's order in a bankruptcy proceeding which included a large attorney's fee, $25,000.00, in the amount of a claim allowed to the Bank as a non-petitioning creditor. We affirm the carefully considered judgment of the district court, the body of which reads as follows:

"(1) This Court has jurisdiction of this matter to the limited extent necessary to protect and effectuate the referee's order dated June 15, 1964.

"(2) Under Texas law, the usual attorney's fee clause in a note is in the nature of a contract of indemnity with respect to actual expenses, and cannot be regarded as providing for liquidated damages or a penalty.

"(3) Any portion of the attorney's fee allowed by the referee in No. BK-63–52, and which is realized on a pro rata basis out of money actually collected, or represented by property received by the bank, but not paid to the attorney, inures to the benefit of the creditors entitled thereto, and must be returned by the bank to the bankrupt estate for distribution to them.

"(4) Under the circumstances of this case, the referee had no jurisdiction to render a judgment for attorney's fees on behalf of the attorney, which is binding upon the bank. The attorney must look to the client and not to the bankruptcy court for his compensation.

"(5) The doctrine of res judicata does not apply with respect to the controversy between the bank and its attorney regarding the payment of an attorney's fee.

"(6) The bank is estopped to question the appraised value of the property.

"(7) This Court will retain jurisdiction to fix the compensation of the guardians ad litem, and thereafter until such time as it is determined whether or not any portion of the amount allowed to the bank in the form of attorney's fees is to be returned to the bankrupt estate pursuant to paragraph (3) of this order.

"(8) Petitioner's request that prosecution of the case in State Court be enjoined, is denied.

"(9) The motions to dismiss are denied.

"(10) Each guardian ad litem shall promptly submit his claim for services rendered, and the total amount shall be taxed as costs in the case.

"(11) Costs shall be divided equally between the Petitioner and the bank.

"(12) All relief not herein specifically granted is denied."

The Bank, as trustee, held a note originally in the sum of $350,000.00 executed by Geotechnics and Resources Inc., and

secured by a mortgage on real property located in San Antonio, Texas. The maker of the note was declared a bankrupt, and the Bank employed the attorney to represent it in prosecuting its claim on the note in the bankruptcy proceedings. No agreement was made as to attorney's fee.

At the time of the adjudication of bankruptcy, there was a balance owing on the note of $333,056.38. The note provided for an additional ten per cent as attorney's fees if placed in the hands of an attorney for collection or collected through judicial proceedings. The Referee's holding as to attorney's fees was expressed as follows: "Attorney's fees stipulated for in said note of February 1, 1963, are allowable at the discretion of the Court, and the same hereby are allowed in the amount of $25,000.00." This sum was added to the $333,056.38 balance owing on the note to make a total of $358,056.38, which the Referee allowed as a secured claim. The mortgaged premises were valued at $225,000.00, were determined to be burdensome, and the Trustee in Bankruptcy was directed to abandon them to the Bank. The Bank was given leave to foreclose its mortgage.[1] The Referee reduced the Bank's claim as allowed by that amount, leaving a balance of $133,056.38 which was allowed as an unsecured claim. Dividends on that claim in the amount of $15,590.69 were paid by the Trustee in Bankruptcy to the attorney, which he retains in his possession under a claim of lien for his fee. The bankrupt estate has been completely distributed. $2,500.00 has been paid by the Bank on the attorney's fee, and all parties concede at least that much to be reasonable.

The Bank sought a declaratory judgment from a Texas state court to fix the amount of a reasonable fee to be paid its attorney for the services herein involved. Thereafter the attorney filed the present complaint in the federal court "to enforce final orders and decrees of this Court" in the bankruptcy proceeding.

The crucial question to be decided is the effect as between the Bank and its attorney of that part of the Referee's order allowing the Bank's claim, which includes in the amount allowed $25,000.00 as attorney's fee.

The contract itself was between the maker and the payee of the note. The rights and obligations as between those two are governed by state law and are well stated in Kuper v. Schmidt, 1960, 161 Tex. 189, 338 S.W.2d 948, 950.

"It is now settled that as between the legal owner and holder of a promissory note and those who are obligated to pay the same, the former is prima facie entitled to recover the attorney's fees stipulated therein upon the happening of the contingency which makes the same payable. In the absence of an issue affirmatively tendered by the defendant, it is not necessary for the plaintiff to prove an agreement to pay such fee to an attorney or that the same is reasonable. The usual attorney's fee clause is, however, in the nature of a contract of indemnity and cannot be regarded as providing for liquidated damages or a penalty. Upon a proper showing the holder will be limited to an amount which is reasonable under the circumstances, and may be denied any recovery where it appears that no expense has been incurred as a result of the maker's default."

The contract being in the nature of a contract of indemnity, the Bank cannot be permitted to make a profit to itself by stipulating for a larger fee or having included in its allowed claim a larger amount than the reasonable attorney's fee it will have to pay. Merchants' Bank of Grenada v. Thomas, 5th Cir. 1903, 121 F. 306, 312.

---

1. The Bank thereafter foreclosed its mortgage, bid the property in at $225,000.00 and took possession of the premises.

The attorney relies strongly upon the following expression in this Court's opinion in Central Loan Co. v. Russell, 1923, 16 F.2d 35, 36:

> "It is admitted that under the law of Texas attorney's fees stipulated in a note become the property of the attorney employed to collect it and do not in any way go to the holder of the note."

That expression was dictum and was not a holding of the Court. It was no more than an admission of the parties that such a rule would be equitable under the facts of that case. It was not intended to and did not establish a rule of law. Indeed it could not, for it finds no support in the law of Texas.

■ The Referee in Bankruptcy did not undertake to allow a fee directly to the attorney. He simply allowed as part of the Bank's claim indemnity against the reasonable fee which the Bank might thereafter pay its attorney. True, the Referee arrived at a definite amount of such indemnity. So long as the status remained unchanged, that amount was binding as between the Bank and the Trustee in bankruptcy. If, however, it should thereafter appear that the Bank owed its attorney a lesser fee than the amount collected on such allowance, the Bank would have to return the excess to the bankrupt estate.

■■ The attorney was not a party to the proceeding in bankruptcy, nor was he in privity with his client, the Bank, in such sense that he could claim the Referee's order to be a final judgment binding as res adjudicata against the Bank as to the amount of the attorney's fee. See Bigelow v. Old Dominion Copper Mining & Smelting Co., 1912, 225 U.S.

111, 126, 127, 32 S.Ct. 641, 56 L.Ed. 1009; Kirby Lumber Corp. v. Southern Lumber Co., 1946, 145 Tex. 151, 196 S.W. 2d 387, 169 A.L.R. 174; Groves-Barnes Lumber Co. v. Freeman, Tex.Civ.App. 1930, 33 S.W.2d 218; 30A Am.Jur., Judgments, §§ 399, 400; 50 C.J.S. Judgments § 756, pp. 276, 277.[2]

To avoid being misunderstood, we should comment on some parts of the district court's judgment.

Paragraph 3 relates to the portion of the attorney's fee allowed by the Referee which may possibly have to be returned by the Bank to the bankrupt estate. The balance owing on the note of $333,056.38, before the addition of the $25,000.00 attorney's fee, was far in excess of the value of the mortgaged property, $225,000.00. The Bank would have received that much irrespective of the allowance of attorney's fee.[3] The Bank's unsecured claim as allowed was $133,056.38. On that claim the bankrupt estate paid to the Bank's attorney $15,590.69, which amounted to approximately 11.72% of the total unsecured claim. If we assume that the unsecured claim was increased by the entire $25,000.00 allowed as attorney's fee, the additional dividends paid on account of such allowance, at 11.72%, would be approximately $2,930.00, or only $430.00 more than the $2,500.00 paid by the Bank to its attorney. That seems probably the extent of the difference which the Bank has collected by reason of the allowance of attorney's fee as a part of its claim. The Bank concedes that it is highly improbable that the state court will fail to award the attorney at least that additional sum. Thus there is very little likelihood of a necessity for the return of any amount by the Bank to the bankrupt estate for distribution to the creditors.

---

2. Some courts have held the attorney estopped to claim a larger fee. See 50 C.J.S. Judgments § 780, pp. 315, 316, and cases cited. That question is not presented in this case. Clearly there is no estoppel against the Bank when no issue was presented to the Referee as between the Bank and its attorney, and the Bank had no representation before the Referee except by the attorney himself.

3. Of course, we do not intimate that the attorney rendered no services in securing the abandonment of the mortgaged property, or that its value should not be considered in determining a reasonable fee.

■ Paragraph 11 of the district court's judgment taxes the costs equally against the Bank and the attorney. The Bank cross-appealed from that part of the judgment and now urges that the court abused its discretion. Rule 54(d) of the Rules of Civil Procedure commits the taxation of costs to the discretion of the district court, and appellate review is extremely limited. See 6 Moore's Federal Practice, 2nd ed. ¶ 54.70 [5], pp. 1308–1313. Under all of the circumstances of this case, we find no abuse of discretion on the part of the district court. The judgment is therefore affirmed. The costs of appeal are taxed against the appellant attorney.[4]

Affirmed.

---

4. See 28 U.S.C.A. § 1912; Fifth Circuit Rule 31, ¶ 2.