In re SAKOWITZ, INC., Sakowitz, Inc. of Amarillo, Sakowitz, Inc. of Arizona, and Sakowitz of Oklahoma, Inc., Debtors and Debtors–in–Possession.

SAKOWITZ, INC.

v.

CHASE BANK INTERNATIONAL.

Bankruptcy Nos. 85–04520–H2–5, 85–04521–H2–5, 85–04522–H2–5 and 85–04524–H2–5.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Aug. 31, 1989.

MEMORANDUM OPINION

RANDOLPH F. WHELESS, Jr., Chief Judge.

The issue in this contested matter is whether or not Chase Bank International and Chase Bank Group are entitled to attorney fees on the unsecured portion of their claim in this bankruptcy case. The

issue arose when the Debtor objected to the attorney fee portion of the Proof of Claim filed by Chase Bank International ("CBI") and the Proof of Claim filed by Chase Bank Group (hereinafter called "CHASE"). The Chase Bank Group is comprised of Chase Manhatten Bank N.A., N.C.N.B., Texas National Bank, Security Pacific National Bank, and Amarillo National Bank.

## BACKGROUND

At all material times since the filing of this Chapter 11 proceeding, Sakowitz, Inc. was, has been, and is now insolvent. It has had its Plan confirmed under which the remaining assets and business of the Debtor were sold to an acquiring company and the proceeds thereof will not be sufficient to pay all indebtednesses in full.

On April 22, 1983, Sakowitz and Chase entered into a Credit Agreement whereby the Banks agreed to loan Sakowitz $29 million dollars. Under the terms of this agreement, if Sakowitz defaults it must reimburse Chase their cost, including reasonable attorney fees and collection costs.

On October 30, 1984, Sakowitz granted a security interest in certain of its assets. The security agreement also provided that Sakowitz would pay Chase all "out of pocket expenses including reasonable expenses for legal services of every kind" incident to the enforcement of the agreement.

On July 24, 1985, the full amount of the indebtedness became due. Demand was made by Chase on August 1, 1985, Sakowitz filed a Chapter 11 proceeding, and the Banks filed claims totalling $27,180,727.84 plus an undetermined amount of attorney fees. During the course of the bankruptcy the Banks have received a total of $21,263,-206.52 from the proceeds of their collateral. Because of various adjustments, the Bank's deficiency claim ranges from $8,086,828.81 to $5,464,626.75. As of January 31, 1989, the post-petition attorney fees accrued on the Bank's claims and claimed by the Banks against the general assets of the estate as an unsecured creditor total $1,760,000.00.

The Chase Bank International debt arose because of irrevocable letters of credit. The security agreement accompanying each application for the letters of credit provide that Sakowitz is to indemnify and hold CBI harmless against any claims, liability or damage, including reasonable attorney fees arising in connection with the credit. CBI filed a proof of claim seeking a total of $42,325.36 plus the cost of $1,851.67 and attorney fees of $15,658.38.

Section 506(b) of Title 11 provides as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Were the claims of Chase Bank Group and CBI fully secured there would be no issue here except as to the reasonableness and necessity for the claim of attorney's fees.

Under Section 506(a) an undersecured creditor has an unsecured claim for the deficiency. This Court is of the opinion that there is no difference between the unsecured portion of an undersecured claim on the one hand and an unsecured claim from a creditor who had no security. Both are unsecured claims as provided in Section 506(a).

Therefore, the issue is whether or not a creditor having a contractual provision for attorney fees is entitled to assert the same as an unsecured claim against the general assets of an insolvent debtor for services performed on behalf of the creditor post-petition.

This Court holds that such a claim cannot be allowed due to the provisions of 506(b) of Title 11. The Court thereby sustains the objection of Sakowitz, Inc. to such proofs of claim to the extent that they include claims for services rendered on behalf of the creditor in prosecution of its claim post-petition.

## RATIONALE

The Court would divide the possibilities for attorney's fees into four categories:

1. Attorney fees for a fully secured creditor.

2. Attorney fees on an unsecured or undersecured claim, which claim has a right to include attorneys fees under State Law for services rendered in reliance upon such right (contractual or statutory) in the prosecution of a claim pre-petition. This is limited to attorney fees which the creditor has incurred *pre*-petition and which are reasonable and necessary.

3. Attorney fees on an unsecured or undersecured claim, which claim has a right to include attorney fees under State Law for services rendered in reliance upon such right (contractual or statutory) in the prosecution of the claim *post*-petition.

4. Attorney fees on an unsecured indebtedness for legal services rendered post-petition in the prosecution of a claim wherein the Debtor is solvent.

By the express provisions of Section 506(b) the attorney fees in category 1 above are allowable if they are reasonable and necessary. In the opinion of this Court, reasonable and necessary legal services rendered in category 2 above should likewise be allowable, since they were incurred in reliance upon the agreement between the parties (including any statutory provision such as Section 38.001 of The Texas Civil Practice and Remedies Code) and because of the provisions of Section 502(b), which provides that the claim of a creditor is to be determined as of the date of the filing of the petition. This category of attorney fees is not now before the Court, as far as the Court is aware.

This Court is further of the opinion that attorney fees should be allowed where the Debtor is solvent (before and after the allowance) due to policy considerations akin to those with respect to the allowance of interest post-petition. See *Vanston Bondholders Protective Committee vs. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). That issue is likewise not before the Court in this case, but is before the Court in another matter being decided by this Court simultaneously with this issue. *In re Continental Airlines Corp., Inc.*, 110 B.R. 276 (Bankr.S.D.Texas, 1989).

It is the third category which is now before this Court. It is surprising to this Court that there is not more direct authority on this question based upon the 1978 Bankruptcy Code which became effective October 1, 1979. The authority that does exist *seems* on first reading to be in favor of the allowance of attorney fees as a part of the unsecured claim of an unsecured creditor where the contract with the Debtor so provides. However, an examination of these cases appears to this Court to reveal the weaknesses and/or inapplicability of these authorities.

The primary authority in favor of allowance of such attorney fees (for post-petition services in connection with an unsecured claim against an insolvent Debtor) is the case of *In re United Merchants and Manufacturers, Inc. v. The Equitable Life Assurance Society of the United States*, 674 F.2d 134 (2nd Cir.1982). This was a case based upon the Bankruptcy *Act*. However, the Second Circuit discussed Section 506(b) of the Code, since the case came up to the Second Circuit long after the Bankruptcy Code had become effective. However, the Court expressly pointed out that Section 506(b) did not govern that case. *Id.* at 138, Fn. 6.

In that Chapter XI filed under the Bankruptcy Act, Equitable Life Insurance Company ("Equitable") and John Hancock Mutual Life Insurance Company ("Hancock") had filed proofs of claim including collection costs (including attorney fees). These had been allowed by Bankruptcy Judge Babbitt to the extent of services rendered "outside" of the Chapter XI proceeding. District Judge Knapp had reversed this holding and disallowed the claim for these collection costs. The Second Circuit reversed Judge Knapp on this issue and upheld the claim for attorney fees.

The respective proofs of claim of Equitable and Hancock included claims for expenses incurred in protecting their inter-

ests in the Debtor's assets. Their respective loan agreements provided for recovery of such collection costs.

Judge Knapp had recognized that a primary purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands. He reasoned that this principle should bar enforcement of any contractual provision which would permit one creditor—and not others—to charge the estate with legal expenses associated with processing a claim before the Bankruptcy Court. Judge Knapp distinguished cases wherein a secured creditor was fully secured.

The Second Circuit, in reversing Judge Knapp, did not agree that the policy of equitable distribution rendered an unsecured creditor's "otherwise valid contractual claim for collection costs unenforceable in bankruptcy."

The Second Circuit concluded that when equally sophisticated parties negotiate a loan agreement that provides for recovery of collection costs upon default, the Court should presume, absent a clear showing to the contrary, that the creditor gave value, in the form of a contract term favorable to the Debtor or otherwise, in exchange for the collection costs provision. Such a creditor should recover more in the division of the Debtor's estate because it gave more to the Debtor at the time it made the loan. The Court stated:

> Rather than providing an underserved bonus for one creditor at the expense of others, allowing a claim under a collection cost provision merely effectuates the bargain—for terms of the loan contract.

This "presumption" seems to this Court to be unrealistic. It is traditional that virtually *all* promissory notes, deeds of trust, and security agreements provide for attorney fees. And under Texas statutory law (Section 38.001 of the Texas Civil Practice and Remedies Code) a person may recover attorney fees, in addition to the valid claim, if the claim is for an oral or a written contract, for services rendered or labor performed or for materials furnished, as well as other listed claims. Such statutory provisions should be read into a contract, yet can they be said to be "bargained for" or that the value was given in exchange therefor?

The *United Merchants* court seems to accept the creditors' argument that their claims for collection costs are based upon contract. However, when talking about attorney fees incurred post-petition, the effect is to allow specific performance of a note as a contract against a debtor. This is not done in any other instance. It should be kept in mind that Section 502(b) speaks in terms of the proof of claim *as it existed at the time of the filing of the case.* This is the basis of this Court's distinction between attorney fees incurred on an unsecured claim pre-petition and those incurred post-filing.

The Second Circuit relied, at least in part, on *Security Mortgage v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928) and quoted from Justice Brandeis' opinion in that case as follows:

> The character of the obligation to pay attorneys fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property.

The Second Circuit further explained that if the *Security Mortgage* Court contemplated recovery of attorney fees by secured creditors only, the reference to a "provable claim" would have been meaningless.

However, In *Security Mortgage Company,* the creditor was fully secured. The language of the Supreme Court to the effect that the character of the obligation to pay attorney fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property is dicta as to the attorney fees being part of a provable claim. In addition, the Court could have been speaking of attorney fees earned by a creditor's attorney pre-petition in reliance on such a contractual provision. Such attorney's fees have become the obligation of the debtor pre-petition and can be proven like any other indebtedness. See, *In re Continental*

*Vending Machine Corp.*, 543 F.2d 986, 992 (2nd Cir.1976).

In *United Merchants*, the Second Circuit referred to opinions from other circuits. *Wortham Bank & Trust, N.A. v. Morris*, 602 F.2d 826 (8th Cir.1979), and *Lelaurin v. Frost National Bank*, 391 F.2d 687 (5th Cir.) *cert. denied*, 393 U.S. 979, 89 S.Ct. 447, 21 L.Ed.2d 440 (1968). It also referred to *Hartman v. Utley*, 335 F.2d 558 (9th Cir.1964).

As noted, in dicta, the Second Circuit discussed Section 506(b) of the Bankruptcy Code and concluded that such section merely codified precode law that an oversecured creditor could assert a claim for attorney fees as part of its secured claim. On page 138 the Court noted that neither the statute nor its legislative history sheds any light on the status of an unsecured creditor's contractual claims for attorney fees.

Lastly, the Second Circuit disagreed with Bankruptcy Judge Babbitt's determination that limited the recovery of the attorney fees to those incurred for services rendered "outside" the Chapter XI proceeding.

The Second Circuit distinguished *Lane v. Haytian Corp. of America*, 117 F.2d 216 (2d Cir.) *cert. denied*, 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537 (1941); and *In re FAS International, Inc.*, 382 F.Supp. 77 (S.D.N. Y.1974), aff'd, 511 F.2d 1164 (2d Cir.), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975); and *James Talcot, Inc. v. Wharton (In re Continental Vending Machine Corp.)*, 543 F.2d 986 (2d Cir.1976).

In distinguishing *James Talcot, Inc. vs. Wharton*, the Court announced that not all costs are unrecoverable because the services for which they were incurred duplicated those rendered by the Official Creditors Committee. The Court recognized that to some extent the services rendered to Talcot as a creditor might have duplicated those furnished by other counsel for the trustee in the same matter. The Court indicated that the question of duplicative services may be taken into account in appraising the extent of value of the services reasonably necessary.

The primary distinction that this Court would make between the case before the Second Circuit in *United Merchants* and the case now pending before this Court is that the *United Merchants* case was based upon the Bankruptcy Act and this case is governed by the provisions of the Bankruptcy Code and § 506(b) in particular *and* this Court disagrees with the Second Circuit's dicta concerning the effect of § 506(b).

The Second Circuit opinion in *United Merchants* and the cases cited and relied on in that opinion are all based upon the provisions of the Bankruptcy Act which have now been replaced by the Bankruptcy Code. While the Second Circuit in *United Merchants* discussed § 506(b) of the Code and stated, in *dicta*, that it merely codified pre-Code law that an oversecured creditor can assert as part of its secured claim a right to interest and costs, including attorneys fees, this Court disagrees.

Subsection 506(a) of the Bankruptcy Code expressly provides for both a secured *and* an unsecured portion of a secured indebtedness where the value of the collateral is less than the debt. In the following subsection, [506(b)], Congress provided for attorney fees *only* for the secured portion of such a claim. Congress must be presumed to have understood what it was doing. It could easily have provided for attorney fees for the unsecured portion of the claim as well as the secured portion. That it did not do so this Court feels is determinative of the issue before this Court under the maxim of *expressio unius est exclusio alterius*. This is a maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another. When coupled with the provisions of § 502(b), which provides for the determination of a claim *as of the date of the filing of the petition*, it is clear that the statutory scheme provided for by the Congress in the Bankruptcy Code excludes attorney fees earned post-petition on unsecured proofs of claim or on the unsecured portion of a secured claim notwithstanding any contractual (or statutory) provision which would allow such fees outside of bankruptcy.

In so ruling the Court is aware of the holdings in the following cases, which are discussed below. *In the Matter of 268 Ltd.*, 789 F.2d 674 (9th Cir.1986); *In re Ladycliff College*, 56 B.R. 765 (S.D.N.Y. 1985); *Liberty National Bank v. George*, 70 B.R. 312 (W.D.Kentucky, 1987); and *In re Missionary Baptist Foundation of America, Inc.*, 24 B.R. 970 (Bankr.N.D. Tex.1982).

The issue in *In the Matter of 268, Ltd.* was slightly different. There Sanson had conveyed an apartment project to 268 Ltd., a Nevada limited partnership. The Deed of Trust provided that in the event of default and sale of the property by the Trustee 5% of the balance remaining due at the time of default would be paid to Sanson as attorney fees.

After the filing of an involuntary petition against 268 Ltd. and default on the secured obligation and the sale of the real property securing the debt, Sanson applied to the Bankruptcy Court for $197,500 in attorney fees provided for in the deed of trust (i.e. 5% of the debt). The court awarded $20,-000. The property had sold for about one million dollars in excess of the outstanding principal. Thus funds were available to pay the contractually set fee and, in addition, the contracted for amount fit within the acceptable provisions of § 506(b) of the Code allowing attorney fees. In other words, the unpaid balance of the debt plus the $197,500.00 in attorneys fees was less than the amount that the property sold for.

The Ninth Circuit upheld the Bankruptcy Court in making its assessment of the reasonableness of the fee and in engaging in an independent reasonableness inquiry in the first place. The Ninth Circuit notes that the trial court had been generous in its determination of the reasonable fee. The Ninth Circuit reasoned that Congress had chosen to treat contractual fees as part of the secured claim only to the extent that they are "reasonable."

However, the Ninth Circuit went on to say that its rejection of Sanson's construction of 506(b) does not preclude it from seeking the contractual fees in excess of $20,000 as an unsecured claim. The Ninth Circuit noted that when read literally Section 506(b) arguably limits the fees available to the oversecured creditor. However, the Ninth Circuit reasoned that when read in conjunction with 506(a) it may be understood to define the portion of the fees which shall be afforded secured status and they adopt this interpretation on the grounds that other creditors may claim such expenses under 11 U.S.C. § 502(b)(1). The Court ignored the language of Section 502(b) which provides that the claim shall be determined "as of the date of the filing of the petition." There the events triggering the 5% fee all occurred post-petition.

The Ninth Circuit then affirmed that Bankruptcy Court's fee award of $20,000 under § 506(b) and remanded to allow Sanson to *seek* the balance of its $197,500.00 claim under section 502. The Court then stated "we express no opinion on the enforceability under the governing State Law of the Deed of Trust Attorneys Fee Provision."

With due respect to the Ninth Circuit, it seems contrary to all the principles of bankruptcy that a creditor could obtain a windfall claim against an estate merely because a contract provides for the same. By the express finding of the court, this portion of the 5% fee was that part *in excess* of what was reasonable. The same should constitute a fraudulent transfer under § 548(a) of the Code and/or would (at least) be a penalty which would give it a low priority under 11 U.S.C. § 726 and thus would be entitled to no distributions unless all superior claim were paid in full.

Lastly, the Ninth Circuit did not reverse and render. Therefore, it is not clear that the Ninth Circuit intended to *require* the Bankruptcy Court to allow the creditor Sanson a windfall unsecured claim against the general assets of the debtor in the amount of $177,500. It merely remanded in order to allow Sanson to "seek" such balance under sections 502. Be that as it may, this Court disagrees with the Ninth Circuit's interpretation of Section 506(b) and Sections 501 and 502 of the Bankruptcy Code.

In *In re Ladycliff College,* the United States District Court for the Southern District of New York upheld Bankruptcy Judge Ryan's holding that an unsecured claim for legal expenses is not barred by Section 506(b). That court cited and relied on *United Merchants* without discussion of the issue.

In *Missionary Baptist Foundation of America, Inc.,* 24 B.R. 973 (Bankr.N.D. Tex.1982), the Bankruptcy Court for the Northern District of Texas relied on the rationale and holding of *United Merchants* and that of *Lelaurin v. Frost National Bank of San Antonio,* 391 F.2d 687 (5th Cir.1968), in allowing attorney fees on an unsecured claim. There was no discussion of 11 U.S.C. 506(b) contained within this opinion.

The Fifth Circuit's holding in *Lelaurin* was likewise a pre-Code case. In addition, the Fifth Circuit in *Lelaurin* was not directly upholding an award of attorney fees on an unsecured claim in a bankruptcy proceeding. The action was actually one of a lawyer suing his client, Frost National Bank, for services rendered in connection with a bankruptcy proceeding.

In the bankruptcy case the lawyer had filed a proof of claim on behalf of the Bank which claim was in part secured and part unsecured. The claim included attorney fees. The Bankruptcy Judge had allowed $25,000.00 as an attorney's fee to be included in the unsecured portion of the proof of claim of the Bank against the Debtor. No appeal was taken from this award.

The issue before the Fifth Circuit was whether or not this holding was res judicata or whether the Bank could contend in the suit by its attorney that it should be allowed a reasonable attorney's fee of less than the $25,000.00 determined by the Bankruptcy Court. The Bank had received a dividend (although not payment in full) on this $25,000.00 portion of their claim, as well as on the rest of their claim.

The holding of the Fifth Circuit was that the principle of res judicata did not apply and that the Bank could raise factual issues as to the amount to be awarded the attorney for his services. The Fifth Circuit did not criticize the Bankruptcy Court for its action nor did it discuss the appropriateness of that Court's holding. While *Lelaurin* has been cited as a precedent for the allowance of attorney fees on an unsecured portion of a claim; nevertheless, it is not such a holding unless the Fifth Circuit, by implication, intended to approve the action of the Bankruptcy Court. On the other hand, since the award of attorney fees had not been appealed that issue was not before the Court *and* the Court may have felt that the issue was done and over with and could not be collaterally attacked. See *Republic Supply vs. Shoaf,* 815 F.2d 1046 (5th Cir.1987).

Even if tacit approval was the true intent of the Fifth Circuit and the effect of its holding in *Lelaurin;* nevertheless, that was an Act case and was not based upon Section 506(b) of Title 11; which is the foundation for this Court's determination.

Hopefully the issue will be determined directly by the Fifth Circuit or the Supreme Court at some point and the matter will finally be resolved.

There is some post-Code authority for this Court's holding. In *Flight Transportation Corporation Securities' Litigation,* 78 B.R. 562 (D.Minn.1987), the District Court in Minnesota refused to allow a claim of an indenture trustee for attorney fees as a general claim against the estate. The Court ruled that 11 U.S.C. 503(b)(4) permits reasonable compensation for professional services rendered by an attorney or an accountant of an indenture trustee provided there is a substantial contribution to the case. The Court had found no such substantial contribution and disallowed the requested fee on the basis that such services were provided solely for the client as a creditor in prosecuting the creditor's claim and held that such were not compensable, citing *In re Richton International Corporation,* 15 B.R. 854, 856 (S.D.N.Y.1981). By any fair implication, the claim was not being allowed as an unsecured claim against the estate either.

In the *Liberty National Bank & Trust v. George,* the District Court for the Western District of Kentucky held that post-pe-

tition interest on the unsecured portion of a (partially) secured creditor was not allowable as a claim against the estate because of the provisions of 506(b) but nevertheless allowed the attorney fees as part of the unsecured claim notwithstanding the same Code provision. The Kentucky District Court relied on the authority of *United Merchants, Matter of 268, Ltd., In re Ladycliff College* and *In re Martin*, 761 F.2d 1163 (6th Cir.1985). The essence of the rationale is that the attorney fees claimed is simply a part of the unsecured creditor's claim.

However, one might point out, so is the provision for interest.

The case of *In re Martin* is simply not applicable. It was a case involving a dischargeability action against the debtor and was *not* a claim against the general assets of the estate. A totally different set of policy rationale is involved. Where the debt is non-dischargeable there is no acceptable rationale that this court is aware of to inhibit the full application of State Law as to the debt, including any provisions concerning attorney fees. The claim is *not* one against the general assets of the estate but only against the debtor and it is as if there is no discharge as to that particular indebtedness.

*In re Martin* does not hold that an unsecured proof of claim (against the estate) is entitled to include attorney fees if the underlying contractual provisions would so allow. The real essence of the determination to be made here is whether one accepts the rationale of *United Merchants* stated in *dicta* concerning the meaning and effect of Section 506(b) of the Bankruptcy Code on the one hand, or the doctrine of *expressio unius est exclusio alterius* as applicable to interpret the meaning and effect of this section.

In this Court's view, the latter principle is the appropriate interpretation of 11 U.S.C. 506(b). If attorney fees are allowable on the unsecured portion of a debt, there would be no need for the subsection at all. Further, if Congress had intended for both a secured claim and an unsecured claim to bear attorney fees, the Congress could easily have said so instead of stating what it did in section 506(b). This seems especially correct in light of the language of section 502(b).

In expressing this opinion and making this determination, this Court is cognizant of and has given thought to the possibility that attorney fees incurred by a creditor post-petition might be allowable when based upon a contractual or statutory provision, but that in determining whether and to what extent the court should make an award, the court should look very closely at the issue of whether or not the services were actually needed for the purpose of the prosecution of the creditor's claim. Of course, this is one alternative to outright denial of such claims, when viewed from a policy standpoint only. However, the Court is also cognizant of the fact that it is extremely difficult, once extensive services have been performed, for the Court to determine that services were not necessary. The Court is looking backward in time and has the benefit of hindsight. The creditor would have a different prospective in determining whether to involve a lawyer. Each creditor might send an attorney to every hearing in a case, as it is conceivable that the outcome of virtually every contested matter could have *some* impact on the debtor and therefore on the recoverability of the creditor's claim.

The Court should be cognizant of the fact that § 503 allows a creditor a recovery of reasonable compensation for professional services rendered by an attorney of such creditor in making a substantial contribution in a case under chapter 11 (or chapter 9). Thus we are dealing with claims of creditors in chapter 11 whose attorneys have *not* made a substantial contribution to the case.

Counsel for Sakowitz is requested to prepare and present an order consistent with this opinion.