**In re Raymond BYRD, Jr. and Kelli Alane Byrd, Debtors.**

**No. 95–33220.**

United States Bankruptcy Court,
E.D. Tennessee.

March 7, 1996.

Richard M. Mayer, Knoxville, Tennessee, for Debtors.

Paige M. Collins, Morristown, Tennessee, for Jefferson Financial Services, Inc.

Gwendolyn M. Kerney, Knoxville, Tennessee, Chapter 13 Trustee.

### *MEMORANDUM ON DEBTORS' OBJECTION TO CLAIM*

RICHARD S. STAIR, Jr., Chief Judge.

The court has before it an Objection to the Claim of Jefferson Financial Services, Inc. (Jefferson Financial) filed by the debtors on January 30, 1996, objecting to Jefferson Financial's claim to the extent it seeks $300 in postpetition attorney fees. Jefferson Financial's Proof of Claim filed January 4, 1996, for $4,409.39, which includes principal of $4,109.39 and attorney fees of $300, is based on a note and security agreement executed by the debtors in the amount of $4,123.60 on August 30, 1995. With regard to the collection of attorney fees, the note provides: "Failure to pay any installment promptly when due, at the option of the holder hereof, with or without notice or demand, render immediately due and payable all unpaid in-

stallment less all unearned charges plus reasonable attorney's fees and cost."

Shortly after the note was executed in favor of Jefferson Financial, the debtors commenced this case under Chapter 13 on December 5, 1995. The debtors reported on Schedule D filed contemporaneously with their petition that Jefferson Financial holds a claim in the amount of $4,500, of which $2,200 is unsecured and $2,300 is secured by a 1985 Mercury Cougar valued at $1,800 and a stereo valued at $500. The debtors' Chapter 13 Plan filed December 5, 1995, provides for Jefferson Financial's secured claim to be paid in the amount of $2,300. Jefferson Financial's Proof of Claim values the collateral at $2,300; therefore, it is undisputed that Jefferson Financial is undersecured. The parties have stipulated that the attorney fees included in Jefferson Financial's claim were incurred following the debtors' default on the note and the filing of their petition. The debtors do not dispute that Jefferson Financial has a contractual right to the reasonable attorney fees of $300 included in its Proof of Claim.

The sole issue before the court is whether an undersecured creditor's claim for postpetition attorney fees, to which it has a contractual right, is allowable under the Bankruptcy Code. Both parties have submitted briefs on this issue, and oral argument was presented March 6, 1996, at a hearing on the debtors' objection held contemporaneously with a hearing on confirmation of the debtors' Chapter 13 Plan.[1]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

## I

In this case, determining "the meaning of ... [the Bankruptcy Code] begins where all such inquiries must begin: with the language of the [Code] itself.... [I]t is also where the inquiry should end, for where ... the [Code's] language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation omitted)

(quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). The Bankruptcy Code defines the term "claim" as, among other things, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.A. § 101(5)(A) (West 1993). The amount of a contingent or unliquidated claim "shall be estimated for purpose of allowance" where "the fixing or liquidation ... would unduly delay the administration of the case." 11 U.S.C.A. § 502(c) (West 1993). In this case, Jefferson Financial has estimated that it will incur postpetition attorney fees in the amount of $300, and the debtors do not dispute the reasonableness of this amount.

In addition to providing for the estimation of contingent and unliquidated claims, § 502, titled "Allowance of claims or interests," also establishes certain conditions under which a claim shall not be allowed. These conditions include if, at the time the petition is filed, the "claim is for unmatured interest," or if the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C.A. § 502(b)(1), (2) (West 1993 & Supp.1995). Section 502 does not expressly disallow contingent, unliquidated, or unmatured claims for attorney fees.

Section 506 of the Bankruptcy Code also includes a provision that may arguably be used in connection with *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), to support an argument that a claim for postpetition attorney fees should be disallowed. Section 506, titled "Determination of secured status," provides in material part:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees,

1. The confirmation issue has been resolved in a separate Memorandum and Order.

costs, or charges provided for under the agreement under which such claim arose. 11 U.S.C.A. § 506(b) (West 1993). The Supreme Court in its interpretation of § 506 concluded in *Timbers* that § 506(b) has the

> substantive effect of denying undersecured creditors postpetition interest on their claims—just as it denies *over* secured creditors postpetition interest to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral. Section 506(b) provides that "*[t]o the extent that* an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim." (Emphasis added.) Since this provision permits postpetition interest to be paid only out of the "security cushion," the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest. *See* 11 U.S.C. § 502(b)(2).

484 U.S. at 372–73, 108 S.Ct. at 631 (italics added). Contrary to the situation in *Timbers*, there is no general rule disallowing postpetition attorney fees set forth in § 502(b). The court, therefore, rejects the decision of *In re Woodmere Investors Ltd. Partnership*, 178 B.R. 346, 356 (Bankr. S.D.N.Y.1995), relied upon by the debtors, in which the court concluded that a claim for postpetition attorney fees must be disallowed based on *Timbers* and § 506(b).

The court also rejects those cases cited by the debtors in which courts have concluded that unsecured contractual claims for postpetition attorney fees must be disallowed pursuant to § 506(b). *See, e.g., Sakowitz, Inc. v. Chase Bank Int'l (In re Sakowitz, Inc.)*, 110 B.R. 268 (Bankr.S.D.Tex.1989). To hold otherwise would create a judicially mandated exception to the Code's definition of a claim found at § 101(5)(A) and the general rules of allowance explicitly set forth in § 502(b). Moreover, a broad interpretation of § 506(b) is contrary to its purpose, as explained by the Second Circuit Court of Appeals:

> Section 506(b) ... merely codifies pre-Code law that an *oversecured* creditor can assert, *as part of its secured claim*, its

right to interest and costs arising under its credit agreement. Neither the statute nor its legislative history sheds any light on the status of an unsecured creditor's contractual claims for attorney's fees.

*United Merchants & Mfrs., Inc. v. Equitable Life Assurance Soc'y of the U.S. (In re United Merchants & Mfrs., Inc.)*, 674 F.2d 134, 138 (2d Cir.1982) (citations omitted); *see In re Keaton*, 182 B.R. 203, 208 (Bankr. E.D.Tenn.1995) ("Section 506(b) was intended to express limits on the extent to which the creditor's attorney's fees will be treated as secured. It was not intended to define what fees can be included in the creditor's unsecured claim.").

The plain language of the Bankruptcy Code provides that a claim may permissibly include a contingent, unliquidated contractual right to payment of postpetition attorney fees, and such a claim may be estimated for allowance purposes. A contractual right to payment of contingent, unliquidated, postpetition attorney fees is a prepetition claim, and § 502, while providing for the disallowance of unsecured claims for unmatured interest, makes no mention of unsecured prepetition claims for postpetition attorney fees. *See Keaton*, 182 B.R. at 206 (discussing *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1168 (6th Cir.1985)). Jefferson Financial, an undersecured creditor in this case, is, therefore, deemed to fall within the general rule of allowance set forth in § 502(b), i.e., "the court ... shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim" in cases such as this where the exceptions set forth in § 502 are inapplicable. This conclusion properly implies that § 506 does not create additional exceptions to the allowance of claims; rather, it only provides for the classification of allowed claims as secured or unsecured.

Based on the foregoing, the court finds the debtors' objection unsupported by the plain language of the Code and adopts the holding set forth by Judge Stinnett of this court's Southern Division in *Keaton*. The debtors' Objection to the Claim of Jefferson Financial will be overruled. The Proof of Claim filed by Jefferson Financial on January 4, 1996,

will be allowed in the amount claimed, $4,409.39, of which $2,300 is secured and $2,109.39 is unsecured.