### In re HEDGED–INVESTMENTS ASSOCIATES, INC., et al., Debtors.

### The Bronze Group, Ltd., Appellant,

### v.

### Harvey Sender, Trustee, et al., Appellees.

Civ. No. 02–B–1295(MJW).

Adversary No. 96–1583(SBB).

Bankruptcy No. 90–14149(PAC).

United States District Court, D. Colorado.

May 23, 2003.

**524**

Randall J. Feuerstein, Dufford & Brown, P.C., Phillip Dean Barber, Denver, CO, for appellant.

John Benjamin Wasserman, Sender & Wasserman, PC, Kenneth James Buechler, Elizabeth Marie Keenen, Sender & Wasserman, PC, Bruce E. Rohde, Davis & Ceriani, Mary Frances Cetrulo, Edwin G.

Perlmutter, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for appellees.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

### I.  Facts

This appeal is the latest in a series of cases concerning the far-reaching effects of a "Ponzi" investment scheme perpetrated by James Donahue (Mr. Donahue) and his wholly-owned corporation, Hedged Investments Associates, Inc. (HIA, Inc.), via three limited partnerships: Hedged Investments Associates, L.P. (HIA, L.P.); Hedged Securities Associates II, L.P.; and Hedged Securities Associates, L.P. (HSA). *See Sender v. Hannahs (In re Hedged–Investments Assocs.)*, 86 F.3d 1166 (10th Cir.1996); *Sender v. Simon,* 84 F.3d 1299 (10th Cir.1996); *Sender v. Buchanan (In re Hedged–Investments Assocs.)*, 84 F.3d 1286 (10th Cir.1996); *Sender v. Johnson (In re Hedged–Investments Assocs.)*, 84 F.3d 1267 (10th Cir.1996); *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged–Investments Assocs.)*, 48 F.3d 470 (10th Cir.1995); *Sender v. Simon,* 174 B.R. 601 (D.Colo.1994). The purpose of the scheme was to attract investors by guaranteeing substantial returns from stock options trading. Mr. Donahue paid "profits" to earlier investors with the investment capital of later investors, publicly reporting false earnings as "proof" of his success.

In its first years of operation, HIA, Inc. made several million dollars in profits for its limited partners. Although HIA, Inc. suffered trading losses in most years, it remained in business for approximately 12 years from the late 1970's until mid–1990 when catastrophic losses caused HIA, Inc. to file Chapter 11 on August 30, 1990. The case was converted to Chapter 7 and

thereafter the Trustee, Harvey Sender, filed involuntary petitions against the three first-tier limited partnerships. Despite some profitable trades, Mr. Donahue and HIA, Inc. amassed approximately $136 million in trading losses over the life of the scheme. From 1977 until the scheme's collapse, Mr. Donahue and HIA, Inc. fraudulently enticed more than 1,600 investors to place their funds in HIA, Inc. It is undisputed that the monies of HIA, Inc., HIA, L.P. and the other limited partnerships were commingled in a single bank account or common investment account.

In addition to investor monies, this scheme was fueled by monies loaned to HIA, Inc. under various promissory notes. Pertinent here, HIA, Inc. received money from the Bronze Group (Appellant) via a promissory note, security agreement, UCC–1 financing statements and other loan documents. The Bronze Group is a Colorado limited partnership whose general partner is Charles Brown and limited partners are individuals and trustees of the Energy Fuels Corporation Profit Sharing Trust and of the Energy Fuels Nuclear, Inc. Pension Trust.

The Bronze Group entered into a loan transaction with HIA, Inc. in 1986 by advancing $900,000.00 to HIA, Inc. pursuant to a promissory note. The note provided for payment of a minimum rate of interest of 15 % per annum plus additional interest at the rate of HIA, Inc. earnings after the next 4% per annum. The note was secured by a security agreement and UCC–I financing statements encumbering one of HIA, Inc.'s trading accounts at Kidder Peabody. The loan was also secured by a personal guarantee from James Donahue.

There were a number of repayments made under the note by HIA, Inc. as well as additional advances under the note by the Bronze Group. The principal and accrued interest owed on the note was $2,043,187.68, at the time that the bankruptcy petition was filed. The Proofs of Claim, filed by the Bronze Group in the HIA, Inc. and HIA, L.P. estates were based upon the debt claim evidenced by the note. The Bronze Group, which was not aware of HIA, Inc.'s problems until word of its losses became public, lost its entire loan amount as a result of HIA, Inc.'s downfall.

At issue is Bankruptcy Judge Brooks' June 19, 2002 decision in which he denied Appellant's motion for post-petition attorney fees in the amount of $504,308.34. Judge Brooks based his decision on three grounds. He ruled: 1) *res judicata* prevents Appellant's recovery; 2) 11 U.S.C. § 506(b) bars payment; and 3) notions of equity justify denial. Appellant admits it is an "undersecured" creditor. Because I conclude § 506(b) precludes any post-petition attorney fee recovery, I do not address the *res judicata* or equity issues.

## II. Standard of Review

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's ruling. Bankr.R. 8013. I review factual findings under the clearly erroneous standard while conclusions of law are reviewed *de novo*. *See Sender v. Johnson*, 84 F.3d 1267, 1268 (10th Cir. 1996); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543 (10th Cir.1988). I must independently determine the correctness of the ultimate legal conclusions adopted by the bankruptcy court on the basis of the facts found. *Id.* at 1543.

## III. Discussion

The Bankruptcy Court's factual findings are not at issue. I address Appellant's contentions regarding the Bankruptcy Court's legal conclusions *de novo*. Under 11 U.S.C. § 506(b), interest on the

creditor's claim, and the creditor's post-petition fees and costs may only be recovered "[t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim." 11 U.S.C. § 506(b). Therefore, creditors may only recover post-petition fees and costs when their claims are oversecured. *See Wade v. Hatcher (In re Hatcher)*, 208 B.R. 959, 964 (10th Cir. BAP 1997) ("Under § 506(b) ... secured creditors are entitled to post-petition attorney's fees provided that (i) *the creditor is oversecured,* (ii) the fees are reasonable, and (iii) the fees are provided for in the agreement between the parties." (emphasis added)); *In re Welzel*, 275 F.3d 1308, 1317 (11th Cir.2001); *In re Loewen Group Int'l, Inc.*, 274 B.R. 427 (Bankr. D.Del.2002); *In re Smith*, 206 B.R. 113, 115 (Bankr.D.Md.1997); *In re Woodmere*, 178 B.R. 346, 356 (Bankr.S.D.N.Y.1995); *In re Saunders*, 130 B.R. 208, 214 (Bankr. W.D.Va.1991); *In re Sakowitz, Inc.*, 110 B.R. 268, 275 (Bankr.S.D.Tex.1989); *In re Canaveral Seafoods, Inc.*, 79 B.R. 57, 58 (Bankr.M.D.Fla.1987); *In re Mobley*, 47 B.R. 62, 63 (Bankr.N.D.Ga.1985); 4 Collier on Bankruptcy ¶ 506.01, at 506–6 (Lawrence P. King ed., 15th ed. 2001) ("Section 506(b) begins by stating that it applies in the context of an allowed secured claim that is secured by property that is greater in value than the claim amount.").

Moreover, the Supreme Court ruled that § 506(b) applies only to oversecured claims:

> The relevant phrase in § 506(b) is: "[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." *"Such claim" refers to an oversecured claim.*

> The natural reading of the phrase entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose.

*U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (emphasis added).

This rule is based on long-standing bankruptcy tenets. Congress could have provided for the recovery of post-petition fees and costs by unsecured and undersecured creditors such as Appellant. However, it did not. This demonstrates Congressional intent to disallow the recovery of post-petition fees and costs by creditors whose claims are not oversecured. *See, e.g., Saunders*, 130 B.R. at 210 ("If Congress had intended for the holders of both secured claims and unsecured claims to recover attorneys' fees, it could have easily said so."); *Sakowitz*, 110 B.R. at 272 (applying the doctrine of *espresso unius est exclusio alterius* (a maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another) to reach the same conclusion); *Woodmere*, 178 B.R. at 356 ("If no 'security cushion' exists to allow for post-petition interest, none exists for the allowance of attorney fees and costs.").

The Supreme Court has upheld this reasoning, albeit in the context of post-petition interest rather than fees. Nonetheless, interest and fees are treated equally under § 506(b), so this reasoning applies to attorney fees as well. The Supreme Court explained:

Even more important for our purposes than § 506's use of terminology is its substantive effect of denying undersecured creditors post-petition interest on their claims-just as it denies oversecured creditors post-petition interest to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral.... Since [§ 506] permits post-petition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing post-petition interest. [Citing 11 U.S.C. § 502(b)(2).] If the Code had meant to give the undersecured creditor, who is thus denied interest on his claim, interest on the value of his collateral, surely this is where that disposition would have been set forth.... [Section] 506(b) would simply have said that the secured creditor is entitled to interest 'on his allowed claim, or on the value of the property securing his allowed claim, whichever is lesser.' . . .

Section 506(b)'s denial of post-petition interest to undersecured creditors merely codified pre-Code bankruptcy law, in which that denial was part of the conscious allocation of reorganization benefits and losses between undersecured and unsecured creditors. 'To allow a secured creditor interest where his security was worth less than the value of his debt was thought to be inequitable to unsecured creditors.' [Citing Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 164, 67 S.Ct. 237, 91 L.Ed. 162 (1946)]. It was considered unfair to allow an undersecured creditor to recover interest from the estate's unencumbered assets before unsecured creditors had recovered any principal. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S.

365, 372, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Here, Appellant's loan is not oversecured; Appellant admits it is undersecured. Hence, I conclude as a matter of law Appellant is not entitled to recover post-petition fees and charges under § 506(b).

Appellant contends notwithstanding § 506(b) it should recover fees as part of its claim because the promissory note under which it and Hedged–Investments operated specifically contemplates fee payment. I recognize that other courts have held that an unsecured or undersecured creditor may recover post-petition fees as part of its claim if the agreement under which the claim arose provides for such recovery. See Liberty Nat'l Bank & Trust Co. v. George, 70 B.R. 312, 316–17 (W.D.Ky.1987); In re Ladycliff College, 46 B.R. 141, 142–43 (Bankr.S.D.N.Y.1985); In re Byrd, 192 B.R. 917, 919–20 (Bankr. E.D.Tenn.1996). However, I do not view these opinions as persuasive.

Contract language that affords an unsecured creditor attorney fees and costs may form the basis for a state-court action for fees and costs. However, in the context of bankruptcy, the Bankruptcy Code abrogates state-law contract recoveries. See Loewen, 274 B.R. 427; In re Vulpetti, 182 B.R. 923, 926 (Bankr.S.D.Fla.1995) (In a federal bankruptcy proceeding, "state law cannot provide an independent basis for recovery of post-petition fees outside the scope of § 506(b) ..."); In re Fobian, 951 F.2d 1149, 1153 (9th Cir.1991) (In the case of undersecured creditors, "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party.").

The reasoning of the Bankruptcy Court for the Southern District of Texas in Sakowitz is compelling. In that case, debtor

Sakowitz, Inc. and creditor Chase Bank International entered into an agreement under which Chase loaned Sakowitz $29 million. The contract provided that Sakowitz would reimburse Chase for its attorney fees upon Sakowitz's default. *Sakowitz,* 110 B.R. at 269. Sakowitz defaulted and bankruptcy proceedings ensued.

The court ruled that because Chase had an unsecured claim against Sakowitz, it could not assert an attorney fee claim based on the loan contract. In so holding, the court noted that virtually all promissory notes, deeds of trust, and security agreements provide for attorney fees. *Id.* at 271. However, the mere inclusion of such contingency clauses, whether voluntary or as a result of state law, is eclipsed by the Bankruptcy Code limits on undersecured or unsecured creditors' recovery. *Id.* at 271–274. The court concluded by stating that despite the contract, "[i]f attorney fees are allowable on the unsecured portion of a debt, there would be no need for the subsection [§ 506(b) ] at all."

The issue here concerns creditor priority for disbursements from the bankruptcy estate. The underlying action is one of federal bankruptcy law, not state law. Appellant attempts to characterize its appeal as a contract-enforcement controversy. However, this contention grossly overstates the role of Appellant's promissory note in the much larger context of multi-party, multi-case, multi-million-dollar federal bankruptcy proceedings.

Based on the foregoing, I conclude that, notwithstanding Appellant's contract for attorney fees, it may not recover them in this bankruptcy proceeding. Because I conclude that Appellant is not entitled to attorney fees under § 506(b), I need not address either of Appellant's arguments regarding the Bankruptcy Court's *res judicata* or equity analyses.

Accordingly, IT IS ORDERED THAT:

1) The Bankruptcy Court's June 19, 2002 Order denying APPELLANT BRONZE GROUP's motion for attorney fees is AFFIRMED pursuant to 11 U.S.C..§ 506(b).