## No. 12,277.

INTERNATIONAL TRUST COMPANY *v.* STEARNS INVESTMENT
COMPANY ET AL.

(285 Pac. 169)

Decided January 27, 1930. Rehearing denied February 24, 1930.

Messrs. EWING & ARNOLD, for plaintiff in error.

Messrs. BRANDENBURG & BRANDENBURG, for defendants
in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

The purpose of this writ of error is to reverse a judgment dismissing the suit, the court having sustained a general demurrer to the complaint, and the plaintiff having elected to stand upon the complaint.

The following matters appear in the complaint: The Twin Lakes Land and Water Company, hereinafter called the land and water company, the Western Securities Investment Company, hereinafter called the investment company, and the Stearns Investment Company, hereinafter called the Stearns company (a defendant), "were allied and interrelated corporations, with interlocking officers and directors, and were each and all principally controlled by one Thomas B. Stearns." Stearns was vice president and director of the investment company, and "was represented by and acting through others as officers and directors of the Twin Lakes Land and Water Company, and was the controlling force and dominating spirit of all three of said corporations." Whether Stearns owned a majority or a minority of the stock in the corporations does not appear in the complaint; nor does the complaint inform us how many other stockholders there were and the extent of their holdings. On May 4, 1925, the investment company sold to the International Trust Company, hereinafter called the trust company, a promissory note executed by the land and water company and secured by a deed of trust of certain land owned by the land and water company. As part of the same transaction, the investment company agreed "upon request to repurchase this loan * * * at any time on sixty days' notice at par and accrued interest." The 1924 taxes on the land became delinquent, and on December 18, 1925, the investment company bought the land at the tax sale and received a certificate of purchase, which some time prior to August 16, 1926, it assigned to the

Stearns company to secure an indebtedness. The Stearns company knew of the investment company's agreement to repurchase the "loan" from the trust company. On August 16, 1926, the trust company demanded that the investment company repurchase the "loan," as it had agreed to do. The investment company, at that time being hopelessly insolvent, was unable to repurchase. Later (in August, 1927) it was adjudged a bankrupt. On May 27, 1927, the Stearns company and Stearns "by reason of the interest and control of * * * Stearns in the affairs of * * * the Twin Lakes Land and Water Company," caused that company to execute a chattel mortgage of "all crops, rents, issues and profits of said land," and other land, to the Stearns company. The chattel mortgage was recorded. Thereafter the "crops, rents, issues and profits from the 160 acres covered by said deed of trust * * * were turned over to and appropriated by said defendant (the Stearns company) to its own use, and said mortgagor corporation was thereby financially crippled and rendered unable to pay said 1924 taxes or pay said interest or otherwise discharge the burdens and duties imposed upon it by said deed of trust." On June 7, 1927, the land and water company having defaulted in the payment of the principal of the note and the interest thereon, the trust company began proceedings to foreclose the deed of trust. At the foreclosure sale the trust company bought the land, subject to the outstanding tax certificate, bidding therefor the full amount of the principal indebtedness, interest, costs and expenses of sale. It thereafter received a deed from the public trustee. The Stearns company, upon demand being made without any offer of reimbursement, refused to assign the tax certificate to the trust company. The trust company thereupon brought this suit. The relief demanded, so far as this proceeding is concerned, is that defendant the Stearns company be required to assign the tax certificate to the trust company, and that in the event of a redemption of the property from tax sale, the county

treasurer, the other defendant, be restrained from paying the redemption money to the Stearns company, and that he be ordered to pay the same to the trust company.

▇ We learn from the trust company's brief that after the suit was brought the trust company redeemed the property from the tax sale; but the complaint contains no such allegation, and we must test the trial court's ruling on the demurrer by the allegations in the complaint.

We will consider, first, the rights that the trust company acquired by virtue of the agreement, and then the rights that the trust company acquired independently of the agreement.

1. As to the rights that the trust company acquired by virtue of the agreement:

Counsel for the trust company say: "By its repurchase agreement, the securities company in effect guaranteed and agreed to pay the loan and to hold the plaintiff harmless from loss arising therefrom. Having done so, the securities company would not be entitled to demand reimbursement or a tender of the taxes from the plaintiff, as a condition precedent to canceling or surrendering the tax certificate. To hold otherwise would render nugatory and make a mockery of the agreement of repurchase and guaranty."

▇ In their brief counsel say: "The repurchase agreement is the cardinal element in the situation, and it is impossible to argue or consider the case without meeting squarely the question as to what are the necessary effects and implications arising from that contract." That indeed is the all-important question. Counsel answer it in the following manner: "If the repurchase agreement of the securities company had been dictated by its attorney instead of its vice president, it might, without any change in meaning whatever, have read somewhat as follows: For and in consideration of the purchase by the International Trust Company of the note and trust deed constituting our loan No. 3444 for an

amount equal to the face of said note, namely $12,000, the receipt of which purchase price is hereby acknowledged and confessed, we the undersigned the Western Securities Investment Company hereby agree to repurchase said loan from said trust company at any time on sixty days' notice, at par and accrued interest, and to pay said sum to the trust company promptly upon receipt or tender of said note and trust deed, hereby by virtue of the premises agreeing to see that said trust company does not lose or suffer any loss or damage by purchasing this note and trust deed from the undersigned, and guaranteeing that any defaults by the maker of said note and trust deed shall not prejudice or injure said trust company.'' If, instead of making the agreement informally by a letter signed by its vice president, the trust company had secured the services of a lawyer, the agreement, no doubt, would have been expressed in language similar to that used in the first half of the suggested agreement; and if the lawyer had known that the investment company would purchase the land at tax sale and assign the tax certificate to the Stearns company to secure an indebtedness; and if the lawyer had suspected that the investment company, instead of continuing solvent and able to repurchase the note, would later be decreed a bankrupt, and if the lawyer had foreseen the bringing of such a suit as this, he certainly would have inserted provisions similar to those occurring in the latter half of the agreement suggested by counsel. However, we must consider, not the agreement that might have been drawn by a lawyer in the situation supposed, but the agreement that was made. It is short and free from ambiguity. The investment company agrees to repurchase the ''loan,'' and to pay therefor the amount of the loan with accrued interest. It did not agree to pay taxes. The investment company was under no obligation to pay them; nor did the agreement create any trust or other relation that would interpose any legal obstacle to the investment company's purchasing the property at tax

sale. The investment company was under contractual obligation to repurchase the note, and there is nothing in the record to suggest that had demand been made before it had become insolvent, it would not have repurchased it. Faced with the possibility of again becoming the owner of the note, its action in protecting its interest by purchasing the property at the tax sale, thus preventing its purchase by a stranger, was the exercise of ordinary business prudence. No contractual right of the trust company was violated by the transaction.

Under the agreement, the trust company had the right to return the note and receive the amount of the principal of the note, with interest thereon; that, and nothing more. It received that amount when at the foreclosure sale it bought the property for the full amount of the principal indebtedness, interest, costs and expenses of sale. The situation was the same as though a stranger had purchased the property at the foreclosure sale, paying therefor the same amount in cash, the officer paying to the trust company, out of the proceeds of the sale, the full amount of the principal indebtedness, with interest thereon, after first paying the costs and expenses of sale. *Plains Loan, Realty & Investment Co. v. Hood,* 76 Colo. 322, 230 Pac. 1008. The trust company has received all that it was entitled to under the agreement. It also may be noted that since there is no allegation of the value of the property, which, for aught we know, may be more than the debt plus the taxes, it does not appear that the plaintiff has suffered any loss. Having bought the property subject to the outstanding tax certificate, the trust company, so far as its contractual rights are concerned, was in the situation occupied by any person who owns property subject to an outstanding tax certificate.

2. As to the rights that the trust company acquired independently of the agreement:

The record informs us that after the sale of the note the investment company "acted as the agent of the plaintiff with reference to said note and deed of trust, col-

lected interest thereon from time to time from the mortgagor and transmitted the same, when collected, to the plaintiff.'' That being true, the trust company would have the right to demand an assignment of the tax sale certificate upon doing equity; that is to say, upon reimbursing the investment company for its outlay. However, no offer to reimburse was ever made, the position of the trust company at all times being that it was entitled to such assignment without reimbursing the investment company or its assignee, the Stearns company. There is nothing in the record to indicate that the investment company would have refused to assign the certificate upon being reimbused; and the same is true of the Stearns company. No offer to reimburse the Stearns company having been made, that company, in refusing to assign the certificate to the trust company, was within its legal rights, even on the assumption that it was chargeable with notice of the agency.

The chattel mortgage transaction between the land and water company and the Stearns company conferred upon the trust company no legal right to an assignment by the Stearns company of the tax certificate without reimbursing the Stearns company.

If the investment company had agreed to pay the taxes, or had guaranteed their payment by the land and water company, it would be required to assign the tax certificate to the trust company without reimbursement. And if the Stearns company had, or were chargeable with, notice of such an agreement, the same relief could be obtained against it. That is the theory upon which the trust company proceeded in this case; a theory that, as we have seen, is not supported by the facts.

If the investment company, while agent of the trust company, had entered into a corrupt deal with the Stearns company to acquire, in the name of the latter, a tax title hostile to the trust company; and, to accomplish that purpose, had stripped the land and water company of its assets by means of a fictitious chattel mort-

38

gage, thereby causing a default in the payment of taxes, and thus had brought about the tax sale—the law, we may assume, would require an assignment of the tax certificate without reimbursement. But that theory, also, finds no support in the allegations in the complaint.

If Stearns used his dominating influence in the land and water company to strip that company of its assets by means of a fictitious chattel mortgage, or by other improper means, and thus had caused said assets to be acquired wrongfully by the Stearns company, that is a matter of which the land and water company or its stockholders might complain; but no such case is before us.

The demurrer was properly sustained. The judgment is right. The judgment, therefore, is affirmed.

Mr. Justice Campbell did not participate.