**SAN MIGUEL BASIN STATE BANK, a Colorado banking corporation, and Small Business Administration, an agency of the United States of America, Plaintiffs-Appellees,**

v.

**George E. OLIVER, individually and as successor to Marguerite L. Oliver, deceased, Defendant-Appellant.**

No. 85CA1482.

Colorado Court of Appeals,
Div. I.

Aug. 20, 1987.

Rehearing Denied Sept. 17, 1987.

Certiorari Denied Feb. 1, 1988.

Brooks & Brooks, John Brooks, Gary L. Swanson, Montrose, for plaintiffs-appellees.

Cashen, Cheney, Johnston & Campbell, Thomas F. Cheney, Montrose, for defendant-appellant.

METZGER, Judge.

In this foreclosure action, George E. Oliver (defendant) appeals the trial court's order denying his motion for an accounting and for an order directing San Miguel Basin State Bank (the Bank) to pay into the court registry that portion of its foreclosure sale bid which constituted unrecoverable fees, interest, and costs. Defendant contends that the trial court erred in allowing the Bank to include the following expenses in arriving at the sum for which the property was foreclosed: interest on insurance premiums and taxes at the rate specified in the note and deed of trust, appraisal fees and costs, and attorney fees and costs incurred in contesting bankruptcy proceedings commenced by the grantors and their successors in interest. We affirm in part, reverse in part, and remand for further proceedings.

In 1978, Douglas and Cherri Oliver (grantors) executed a promissory note secured by a deed of trust to real property in favor of the Bank. The note provided that, in the event of default and sale of the collateral, the holder may deduct "all expenses incidental to or arising from such sale...." The grantors further covenanted to:

"pay all expenses of any nature, whether incurred in or out of court, ... including but not limited to reasonable attorney's fees and costs, ... in connection with the satisfaction of the indebtedness or the administration, supervision, preservation, protection of (including, but not limited to, the maintenance of adequate insurance) or the realization upon the collateral."

The deed of trust provided that, upon the sale of the collateral, the Public Trustee was to pay to the holder of the note:

"the principal and interest due on said note ... and all moneys advanced by

such beneficiary or legal holder of said note for insurance, taxes and assessments, with interest thereon at ten per cent per annum...."

After the grantors defaulted on their payments, the Bank commenced this proceeding to foreclose its deed of trust. On November 29, 1982, a decree of foreclosure was entered in which the trial court awarded the Bank a first priority lien in the amount of $221,852.93 and a third priority lien in the amount of $187,467.66. Defendant, father of grantor Douglas G. Oliver, was awarded a second priority lien in the amount of $48,602.56.

The trial court further ordered that the deed of trust be foreclosed and the real property be sold by the sheriff. The proceeds of the sale were to be applied: (1) to pay all fees, costs, and expenses incurred in connection with the sale; (2) to re-pay advances for taxes, insurance, and other costs after judgment; (3) to pay the Bank $221,852.93 plus interest from the date of judgment; and (4) to pay the balance remaining into the registry of the court.

Pursuant to the decree of foreclosure, the property was sold on April 16, 1985, to the Bank upon its bid of $336,887.24. The Bank paid no funds into the registry of the court because it alleged that its bid contained only its first lien amount plus interest and other allowable expenses.

On June 14, 1985, defendant filed a motion for an accounting of the proceeds from the sheriff's sale. He asserted that a portion of the Bank's costs and expenses should not have been included in determining the amount for which the property was foreclosed. He requested that the court first determine which costs and expenses were not reimbursable to the Bank, and that it then order the Bank to pay the unapproved costs into the registry of the court, to be applied by further court order toward the discharge of his second priority lien.

In a minute order entered on July 26, 1986, the trial court found that, pursuant to the foreclosure decree and the provisions of the deed of trust, the Bank could recover its costs and expenses incurred in the foreclosure. It further found that, while the Bank may have included in its bid some costs and expenses not legally allowable incident to a foreclosure, defendant had failed to produce any authority in support of the relief he requested. Consequently, the trial court denied the motion, and this appeal followed.

■■■ Initially, we note that in reviewing a bid for property at a foreclosure sale, the court has the power to order that any surplus be paid into the registry of the court for a determination of the priorities to that surplus. *See International Trust Co. v. Stearns Investment Co.*, 87 Colo. 31, 285 P. 169 (1930). Junior lienors may challenge the propriety of the sums claimed by the purchasing creditor to be included in the amount for which the property was foreclosed. *See Rowe v. Tucker*, 38 Colo. App. 532, 560 P.2d 843 (1977). By reviewing such claims, the court can ensure that purchasing creditor shall receive credit for only the expenses of sale and the amounts properly due to him. *Rowe v. Tucker, supra.*

## I.

Relying on *Green v. Hoefler*, 115 Colo. 287, 173 P.2d 208 (1946), defendant first contends that the trial court erred in allowing the Bank to apply the interest rate specified in the deed of trust instead of the statutory interest rate to the insurance premiums and taxes advanced by it. We agree in part.

■■■ In *Green v. Hoefler, supra,* the court held that the issuance of a certificate of purchase operates to extinguish the mortgage lien. Thus, the deed of trust and note cease to govern the interest rate or the debt after the foreclosure sale has occurred and a certificate of purchase is issued.

Here, the return of the sheriff's sale provided that the Bank received a certifi-

cate of purchase following sale. Thus, as of the date of issuance of the certificate of purchase, the note and deed of trust were extinguished and the interest rates contained therein no longer applied.

On remand, the trial court should conduct such further proceedings as are necessary to permit it to make the proper computations. The interest rate to be applied before the date of issuance of the certificate of purchase is that contained in the deed of trust. No interest should be allowed after the date of issuance of the certificate of purchase in determining the amount for which the property was foreclosed.

## II.

Defendant next argues that the trial court erred by allowing the Bank's claim for attorney fees of $15,395, in connection with the grantors' bankruptcy which occurred during the pendency of the foreclosure proceedings. He also argues that § 38-38-106, C.R.S. (1982 Repl. Vol. 16A), which limits the recovery of attorney fees in foreclosure proceedings to 10 percent of the sum for which the property is foreclosed, applies. We agree in part.

The Bank maintains that such expenses are allowable pursuant to the redemption and cure statutes, specifically § 38-39-101 and § 38-39-118, C.R.S. (1986 Cum.Supp.). In our view, these statutes are inapplicable.

The redemption and cure statutes have nothing to do with determining the amount for which the property is foreclosed. Rather, § 38-37-113(6), C.R.S. (1982 Repl. Vol. 16A) controls. That statute provides that expenses of sale and moneys due the beneficiary or legal holder of the indebtedness constitute the proper amount. If the property is sold for an amount in excess thereof, the excess is not a part of the sum for which the property is foreclosed. The excess moneys are to be paid to, and held in escrow by, the county treasurer, to be paid to the junior lienors in the order of their priority and then to the owner of record as

of the day of the foreclosure sale. Section 38-37-113(7), C.R.S. (1982 Repl. Vol. 16A).

Expenses of sale are enumerated in § 38-37-119, C.R.S. (1982 Repl. Vol. 16A). Moneys due the legal holder of the indebtedness are governed by the provisions of the note and deed of trust.

◾ Here, the note authorized the bank to collect "all expenses ... in connection with the satisfaction of the indebtedness or the administration, supervision, preservation, protection of ... or the realization upon the collateral." To the extent that the Bank expended money for attorney fees to lift the automatic stay of the bankruptcy court as provided for by 11 U.S.C. § 362 (1983) in order to sell the property, these fees were necessarily spent to realize upon the collateral and, thus, are allowable. Fees incurred in such proceedings for other purposes, however, may not be reimbursable because they would not fall within any of the allowable fees described in the note.

◾ Further, the trial court erred in granting the amount of fees claimed by the Bank. Attorney fees granted pursuant to a foreclosure may be no more than 10 percent of "the sum for which the property is foreclosed." Section 38-38-106, C.R.S. (1982 Repl. Vol. 16A). This provision applies whether a single installment is delinquent or whether the entire debt is accelerated. *Kern v. Gebhardt*, 717 P.2d 998 (Colo.App.1985).

The trial court granted the Bank's claim for attorney fees of $38,970 on a bid of $336,887.24. The Bank had asserted that $23,575 was incurred in connection with the decree of foreclosure and $15,395 was incurred in connection with the grantors' bankruptcies. The total exceeds 10 percent of the sum for which the property was foreclosed. As well, the record does not contain any indication of the requisite proof of the reasonableness of attorney fees claimed.

Thus, the order as to attorney fees must be reversed and the cause remanded to the

trial court to conduct whatever proceedings it deems necessary to ascertain a reasonable award of attorney fees, not to exceed ten percent of the sum for which the property was foreclosed.

### III.

 We also agree with defendant's remaining contention that the Bank is not entitled to include appraisal fees and costs as part of the sum for which the property was foreclosed.

We do not construe the language of the note, which obligated the grantors to pay all "reasonable ... costs ... in connection with ... the administration, supervision, preservation, protection of ... or the realization upon the collateral" to contemplate inclusion of the costs of appraisal of the property. Moreover, the record contains no evidence which would provide any reason to include appraisal costs at this stage of the proceedings. *But see Moreland v. Marwich, Ltd.*, 665 P.2d 613 (Colo.1983). Consequently, the trial court erred in allowing these expenses.

That portion of the order is affirmed which allows, as included in the sum for which the property is foreclosed, the expenses of sale as enumerated in § 38–37–119, C.R.S. (1982 Repl. Vol. 16A), and the amount due on the note to the date of issuance of the certificate of purchase, including the unpaid principal and accrued interest thereon and all moneys advanced, if any, for insurance, taxes, and assessments (with interest thereon at 10 percent per annum). In all other respects, the order is reversed and the cause is remanded for further hearing, if the court deems it necessary, and for entry of an appropriate order fixing the proper amount for which the property was foreclosed. The following should be excluded: (1) any interest after the date of the issuance of the certificate of purchase; (2) any attorney fees arising from the bankruptcy proceedings which are not attributable to the Bank's efforts to realize upon the collateral; (3) any proved attorney fees in excess of 10

percent of the sum for which the property was foreclosed; and (4) appraisal fees and costs. The amount of the bid that is in excess of the amount for which the property was foreclosed shall be ordered paid to the county treasurer to be applied as provided in § 38–37–113(6) & (7), C.R.S. (1982 Repl. Vol. 16A).

PIERCE and KELLY, JJ., concur.