**In re Clifford N. FAST and Rosina M. Fast, Debtors.**

**No. 02–14167–SBB.**

United States Bankruptcy Court, D. Colorado.

Dec. 21, 2004.

Philip A. Pearlman, Pearlman & Dalton, P.C., Denver, CO, for Cynthia v.R. Skeen, Trustee of the Bankruptcy Estate of Clifford and Rosina Fast.

Paul D. Rubner, Rubner Padjen and Laufer, LLC, Denver, CO, for First National Bank of Stratton.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON TRUSTEE'S OBJECTION TO CLAIM # 5 FILED BY FIRST NATIONAL BANK OF STRATTON

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court on September 2, 2004, for legal argument on the Objection to the Claim of the First National Bank of Stratton's (the "Bank") filed by Cynthia v.R. Skeen, Chapter 7 Trustee ("Trustee") on April 26, 2004 (Docket # 71), the Response thereto filed by the Bank on June 1, 2004 (Docket # 73), and the Trustee's Reply to the Response filed on June 16, 2004 (Docket # 74). The Court, having reviewed the file and being advised in the matter, makes the following findings of fact, conclusions of law, and Order.

### I. SUMMARY OF THE CASE AND CONCLUSION

This case presents certain questions of first impression in this District. The Court concludes, *inter alia,* that, under the unique circumstances of this case, an undersecured creditor may be entitled to a claim for postpetition interest at the contract rate and an award of postpetition attorney's fees.

The Bank initially filed a secured claim on August 13, 2003 (identified in the court's records as claim number 5) in the amount of $189,000, plus interest and fees as of the date of the filing of the case ("Bank's Claim"). Upon a closer reading of the Bank's Claim, the Bank

explains that its "collateral has been foreclosed upon pursuant to relief from stay." Attached to the claim is a "Revised Claim" indicating that the principal balance remaining was $74,733.14, together with interest of $25,386.27 and additional attorney's fees of $10,419.50, for a total remaining claim in the amount of $110,538.91, as of August 1, 2003.

In a letter to Trustee's counsel, dated March 9, 2004, the Bank advised the Trustee that it made errors in its calculations and that the Bank was actually owed $113,362.96 as of August 1, 2003.[1] In addition, this March 9, 2004 letter also reflects that the $113,362.96 sum includes postpetition interest and attorney's fees in the total amount of $32,636.24, and that the amount of the Bank's unsecured claim was $80,726.72. The Trustee does not dispute that the amount due to the Bank as of the petition date was $80,726.72.

The Bank, as of the date of the hearing on this matter, asserts a deficiency claim of $122,800.46. Included in this deficiency claim is the Bank's claim of principal in the amount of $80,726.72, postpetition interest of $30,029.94,[2] and postpetition attorney's fees of $12,043.80. As noted below, the estate is solvent and will remain solvent *even* if all amounts claimed by the Bank were to be paid.

The Trustee objects to the Bank's assertion of postpetition attorney's fees and interest. The Trustee asserts that the claimed interest is for unmatured interest and cannot be allowed under 11 U.S.C. § 502(b)(2). To the extent that interest may be allowed, the Trustee takes the position that, under the provisions of 11 U.S.C. § 726(a)(5), interest at the federal rate applicable to judgments—not the contract rate—should be paid on the Bank's claim of principal in the amount of $80,726.72. The Bank, on the other hand, asserts that, because the estate is solvent, it should be paid both its postpetition attorney's fees (which led to the discovery of undisclosed assets and resulted in the estate being solvent) and interest at the contract rate.

For the reasons set forth herein, the Court concludes that the Bank is entitled to postpetition interest at the contract rate and its postpetition attorney's fees.

## II.  FACTUAL BACKGROUND

The following facts are material to the Court's conclusions and ruling and do not appear to be actually and in good faith controverted by the Bank or the Trustee.

### A.  Debtor's Schedules and Statement of Financial Affairs

Clifford N. Fast ("Clifford Fast") and Rosina M. Fast (together Clifford Fast and Rosina M. Fast shall be referred to as "Debtors") filed for relief under Chapter 7 of the Bankruptcy Code on March 27, 2002. Debtors' Schedules and a Statement of Financial Affairs were also filed at that time. The Bank was listed as a secured creditor in the amount of $122,000.00.

On May 9, 2002, the Trustee filed a "No Asset and Order for Payment of Statutory Fees" report. The Bank thereafter obtained an Order granting it relief from the automatic stay on June 26, 2002 and proceeded to foreclose upon and otherwise realize upon its collateral.

Soon after the granting of the relief from automatic stay, the Debtors received their discharge on July 10, 2002. The case was subsequently closed on July 17, 2002.

---

1.  The Bank has not formally amended its proof of claim.

2.  This interest is calculated upon the default rate of interest of 18% under the terms of the note.

Even though the Debtors had received their discharge and the case was closed, the Bank was not satisfied that the Debtors had been forthcoming with respect to disclosure of their assets. Consequently, the Bank undertook its own investigation regarding the veracity and completeness of the Debtors' Schedules and Statement of Financial Affairs. This investigation lead to the discovery that the Schedules and Statement of Financial Affairs were significantly and materially in error and that the Debtors omitted significant and valuable assets sufficient to render the bankruptcy estate solvent. Among the omissions, was a remainder interest held by Clifford Fast in certain real estate located in the County of Yuma, State of Colorado ("Yuma County Property").

## B. Clifford Fast's Remainder Interest in the Yuma County Property

The Bank learned that, in 1980, Clifford Fast's parents, George E. Fast ("George Fast") and Esther L. Fast ("Ester Fast") had established a revocable trust under which Clifford Fast and his sister were both trustees and held remainder interests in substantial holdings of their parents. In 1994, all the trustees, including Clifford Fast, quit claimed separate portions of the trust's property to Clifford Fast's sister, Joyce Sawatzky, and to Clifford Fast, reserving to the parents, George Fast and Esther Fast, a life estate. As a consequence, at the time of filing, Clifford Fast had a remainder interest in the portion of the property conveyed to him, which was not disclosed.

At the time of the bankruptcy filing, Clifford Fast's mother, Esther Fast, was dead (she passed away on May 22, 1997). Consequently, at the time of the bankruptcy filing, the remaining interest in the life estate was to continue during the lifetime of his father, George Fast, who was then 88 years old. George Fast had provided a limited guaranty to the Bank for a portion of debt owed by Clifford Fast. On September 13, 2002, prior to the passage of 180 days from the date of filing, George Fast died, thus ending the reserved life estate and activating the vesting of the remainder interest in Clifford Fast and his sister. No notification was given by the Debtors or their counsel to the Trustee, the United States Trustee, or the Court.

The Bank had been attempting to collect information concerning the property that was the subject of the trust and also various other property which, it believed, would be subject to administration as part of the decedent's estate. No action was taken to administer the decedent's estate. In response to this inaction, the Bank initiated a proceeding as a creditor to assure that funds on George Fast's guaranty would not be dissipated in accordance with COLO.REV.STAT. § 15–12–203.

## C. The Closed No Asset Case Is Reopened and the Estate Becomes Solvent

The Bank, acting through counsel, in mid-January of 2003, contacted the Trustee (who was, at that time, due to the closing of the case, no longer, in fact, the trustee) and informed the Office of the United States Trustee of the undisclosed property. The United States Trustee, on February 7, 2003, filed a Motion to Reopen the Chapter 7 case. This motion was granted February 13, 2003. The Trustee was then reappointed. Counsel for the Bank thereafter met with the Trustee. At that meeting, the circumstances of the trust, the life estate, the remainder interest, the vesting of the remainder, the legal description of the properties (including drawings of the holdings), and the respective interests of the Debtor and his sister were presented to the Trustee, who was

given copies of all the relevant documents, including the maps of the sub-parcels.

Following that meeting and the explanation of the details concerning the undisclosed property, the failure to administer the estate of George Fast, and other related matters, the Trustee sought the appointment of counsel on April 9, 2003. An order for appointment was obtained on April 9, 2003. A Notice of Possible Dividends was sent out on May 22, 2003.

Based upon the information obtained from the Bank, the Trustee undertook to sell the properties that had been the subject of the unlisted remainder interest. The Bank provided the Trustee and her counsel with the names of various individuals it believed might be interested in purchasing the properties that had been the subject of the unlisted remainder interest. However, because the value of the properties would render the Chapter 7 estate solvent, the Trustee negotiated a transaction with Clifford Fast's sister, Joyce Sawatzky, under which she purchased a majority of the property for a sum which the Bank felt was less than its true value but as to which it had no objection because the proceeds would be sufficient to pay all debts owed by the Debtors' estate, including the deficiency owed to the Bank. Satisfied with this result, the Bank filed no objection to the proposed sales and filed no objection to discharge. The sales were finalized and the bankruptcy estate is now, in fact, solvent.

A bar date for filing timely proofs of claim was set for August 25, 2003. The Bank timely filed its claim for the deficiency, and the amount of that claim includes interest and attorney's fees as provided in the loan documentation. That documentation was attached to the Bank's motion for relief from stay and also comprised the offer of proof upon which this Court based its order for relief from stay, which motion was unopposed. Those documents are incorporated herein by reference and the Court has taken judicial notice of that filing.

Following the sales of the newly discovered properties, the Trustee and her counsel have taken the position that the Bank is entitled to neither postpetition accrued interest nor attorney's fees and have filed an objection to the Bank's claim on that basis. Thus, the Trustee requests that this Court disallow all but $80,726.72 of the Bank's Claim so that she can distribute same to the Bank and the remaining sum of approximately $40,000.00 back to the Debtors.

The Debtor's counsel was notified of the possible solvency of the estate on February 16, 2003. The Trustee filed her Objection to the Bank's claim on April 26, 2003 (Docket # 71), placing the matter at issue. The Bank filed its Response to that Objection on June 1, 2004 (Docket # 73) and the Trustee filed a further Reply on June 16, 2004 (Docket # 74). As of the date of this decision, the Debtors have filed nothing in opposition to the Objection.

## III. STATEMENT OF THE ISSUES

There are three issues before this Court:

(1) Is the Bank entitled to postpetition interest, *at all*, or must it be disallowed, pursuant to 11 U.S.C. § 502(b)(2), as it is for "unmatured interest"?

(2) If the Bank is entitled to postpetition interest, at what rate should interest be allowed; that is, the federal rate or the contract rate?

(3) Is the Bank entitled to postpetition attorney's fees?

## IV. ANALYSIS

### A. Jurisdiction of this Court and Standing of the Trustee

The Court has jurisdiction over the subject matter of this proceeding pursuant to

28 U.S.C. § 1334(a) and 157(a). This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(B).

■ The Court concluded, on the record in open court, during the hearing on this matter on September 2, 2004, that the Trustee has standing to object to the Bank's claim, notwithstanding the seeming absence of a pecuniary interest. This conclusion is based upon the Trustee's interest in obtaining direction for the administration and proper management of estates under her supervision. 11 U.S.C. § 702. *But see, In re Riverside–Linden Investment Co.*, 99 B.R. 439 (9th Cir. BAP 1989) (in a case involving the issue of whether the attorney for the trustee should be compensated, the Ninth Circuit Bankruptcy Appellate Panel concluded that the trustee exceeded his duties by investigating an unopposed claim when the estate was solvent and, as a consequence, the trustee's attorney's fees were declined).

## B. The Bank Is Entitled to Postpetition Interest

### 1. *Summary of the Arguments of the Parties*

The Trustee by her filed Objection contends that, pursuant to 11 U.S.C. § 502(b)(2), the Bank's claim for postpetition interest is for "unmatured interest" and, therefore, it cannot be allowed, period. She argues that there is no differentiation in the Bankruptcy Code as between solvent and insolvent estates and therefore the rules normally applied in insolvent estates, which would operate to deny postpetition interest to undersecured creditors, should be applied to this case.[3] The Trustee's argument is, in effect, that the Bank wants this Court to equitably subordinate the Debtors' surplus distribution to the Bank's claim for postpetition fees and the contract rate of interest, in derogation of the scheme of priorities as set forth in the Bankruptcy Code.

The Bank contends that a different analysis must be applied to solvent versus insolvent estates. The Bank argues that, having foreclosed pursuant to its relief from stay, now has an unsecured "claim," as that term is defined in 11 U.S.C. § 101(5)(A), based upon its contractual undertakings and is, therefore, not limited by the provisions of 11 U.S.C. § 502(b)(2) which is designed to limit the pro rata share of distributions to secured creditors in an insolvent estate and which therefore has no proper application here.

### 2. *The Court's Conclusion and Analysis Regarding the Allowance of Postpetition Interest*

■ The Court begins its analysis with the proposition that the claim to interest is a "claim" as defined in 11 U.S.C. § 101(5)(A). The Bank's claim, though originally partially secured, now consists of an unsecured claim as a result of the deficiency after foreclosure pursuant to relief from stay. The question presented, here, is whether a creditor's claim for postpetition interest on an unsecured claim in a case where (1) the debtor concealed assets, (2) the creditor recognized the concealment and materially assisted the trustee in recovering assets, and (3) the estate is now solvent, must be disallowed under 11 U.S.C. § 502(b)(2). After reviewing the case law from this Circuit and this District, the Court believes that this is a matter of first impression.

11 U.S.C. § 502(b)(2) provides:

---

3. The Trustee's stance regarding the issue of whether interest should be allowed, *at all*, was softened subsequent to the initial objection and, at the hearing on this matter, the focus was more on the appropriate *rate* of interest which is discussed herein in IV.C.

(b) Except as provided in subsections (c)(2), (f), (g), (h) and (I) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(2) such claim is for unmatured interest;

The Legislative History reflects that:

Paragraph (2) requires disallowance to the extent that the claim is for unmatured interest as of the date of the petition. Whether interest is matured or unmatured on the date of bankruptcy is to be determined without reference to any ipso facto or bankruptcy clause in the agreement creating the claim. Interest disallowed under this paragraph includes postpetition interest that is not yet due and payable, and any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy. For example, a claim on a $1,000 note issued the day before bankruptcy would only be allowed to the extent of the cash actually advanced. If the original discount was 10 percent so that the cash advanced was only $900, then notwithstanding the face amount of note, only $900 would be allowed. If $900 was advanced under the note some time before bankruptcy, the interest component of the note would have to be prorated and disallowed to the extent it

was for interest after the commencement of the case.

Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor. One unarticulated reason for this is that the discounting factor for claims after the commencement of the case is equivalent to contractual interest rate on the claim. Thus, this paragraph does not cause disallowance of claims that have not been discounted to a present value because of the irrebuttable presumption that the discounting rate and the contractual interest rate (even a zero interest rate) are equivalent.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 352–354 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 62–65 (1978), U.S.Code Cong & Admin.News 1978, pp. 5963, 6307–6310, 5787, 5848–5851.

A bare reading of section 502(b)(2), alone, would seem to suggest that this Court *must* disallow postpetition interest on an unsecured claim, *in any instance, whether the estate is solvent or insolvent.* However, section 502(b)(2) cannot be viewed in a vacuum and must be analyzed in conjunction with section 726(a)(5) and (a)(6), together with existing persuasive, but not controlling, case law.[4]

In those rare cases—like the one presently before the Court—where there are sufficient assets to accommodate *all* creditor claims and a sum would still be distrib-

---

4. Interestingly, most courts have concluded that interest continues to accrue on all prepetition debt even if such interest is not chargeable to the estate. 4 *Collier on Bankruptcy* ¶ 502.03[3][b][3] (Lawrence P. King ed., 15th ed. Rev.2003). This comes into play when the debt in question becomes nondischargeable.

*Id.* The rationale is that the intervening bankruptcy case merely delays payment of the interest on the nondischargeable debt and it does not relieve the payment of interest. *Id.* Thus, section 502(b), generally, would prevent the estate from being responsible for payment of interest, not the debtor, himself (or herself).

uted to the debtor, courts have held that there is a limited exception to the general rule that postpetition interest not be allowed. 4 *Collier on Bankruptcy* ¶ 502.03[3][b][3] (Lawrence P. King ed., 15th ed. Rev.2003); *See In re Kentucky Lumber Co.*, 860 F.2d 674, 677 (6th Cir. 1988). In the *Kentucky Lumber* case, the Sixth Circuit noted that the First and Ninth Circuits have observed that:

> "Despite the general prohibition on the payment of postpetition interest, three exceptions have been developed by the federal courts." *In re Boston & Maine Corp.*, 719 F.2d 493, 496 (1st Cir.1983). "An award of post-petition interest may be allowed in three exceptional cases: (1) where the alleged bankrupt proves solvent (2) where the 'collateral produces income after filing of the petition,' and (3) where the collateral 'is sufficient to pay interest as well as the principal of the claim.' (citations omitted)." *Matter of Walsh Construction, Inc.*, 669 F.2d 1325, 1330 (9th Cir.1982).

These exceptions are not rigid doctrinal categories. Rather, they are flexible guidelines which have been developed by the courts in the exercise of their equitable powers in insolvency proceedings. The reorganization court must consider whether to grant postpetition interest, not as an abstract matter, but in light of the nature of each claim and the equities of the case before it. At all times the reorganization court must be guided by the basic equitable principle announced in *Vanston [Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946)]:

> It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.

*In re Boston & Maine Corp.*, 719 F.2d at 496 (quoting *Vanston*, 329 U.S. at 165, 67 S.Ct. at 241) (citations omitted).

*Kentucky Lumber*, 860 F.2d at 676–77.

Questions regarding equality of distribution are not applicable here as they would be in an insolvent estate. This is a solvent estate. The exceptions set forth in the *Kentucky Lumber* case exist here. That is, (1) Clifford Fast's estate is solvent, (2) his undisclosed assets were liquidated and the estate became solvent, and (3) the sums in the estate will pay all claims and the interest sought by creditor here. Additionally, this Court concludes, in this instance, that there exist two other factors to consider. The first additional factor is that Clifford Fast concealed at least one significant asset of this estate. It is inequitable and antithetical to the Bankruptcy Code to conclude that the Bank is not entitled to postpetition interest when it unearthed significant concealed assets of Clifford Fast while granting a windfall to a rogue and deceptive debtor who neither listed a critical asset nor amended his schedules when the asset fully vested in the debtor. It would reward the dishonest debtor at the expense and to the prejudice of a legitimate creditor whose considerable efforts, persistence, and diligence revealed the unlisted asset. *See, e.g., In re Carter*, 220 B.R. 411, 414 (Bankr.D.N.M.1998) (citing *In re Gaines*, 178 B.R. 101, 103 (Bankr.W.D.Va.1995); *In re San Joaquin Estates, Inc.*, 64 B.R. 534 (9th Cir. BAP 1986)). The second additional factor is that the Debtors *did not* (1) object to the claim or (2) respond to the Objection to Claim filed by the Trustee or the Response of the Bank. *See* Fed.R.Bankr.P. 3007. The only party who would be impacted detrimentally by the allowance of interest are the Debtors. The Debtors have been silent, despite notice and opportunity to be heard.

Moreover, if one views sections 726(a)(5) and 726(a)(6), in conjunction with section 502(b), it seems clear that interest *must* be allowed in this instance. Section 726(a)(5) provides that property of the estate will be distributed in fifth priority "in payment of interest at the legal rate from the date of filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection." The Court does not agree with the analysis of the Trustee that, in effect, the Bank is asking this Court to equitably subordinate the Debtors to the Bank. The distribution scheme, here, is not altered by allowing distribution of interest to the Bank because the Debtors *only* receive the surplus under section 726(a) if distribution has been made to: (1) section 507 claimants, (2) timely filed unsecured claims other than priority claims, (3) tardily filed unsecured claims, (4) claims for fines, penalties or forfeiture, and (5) creditors for postpetition interest. This treatment permits for orderly distribution and fairness to creditors.[5] Under the facts and circumstances of this case, as enunciated above, to disallow the postpetition interest claim of the Bank would be inherently unfair and, effectively, it would inequitably alter the distribution scheme set forth in section 726(a)(5).

## C. The Bank Is Entitled to the Contract Rate of Interest Postpetition

■ Having concluded that the Bank is entitled to postpetition interest, the next question for determination is what is the "legal rate" of interest allowable under 11 U.S.C. § 726(b)(5)? Is the "legal rate" of interest: (1) the contract rate, (2) the federal judgment rate,[6] or (3) the state law statutory rate? Cases have come down allowing interest under each analysis. *See, e.g., In re Carter,* 220 B.R. 411, 414 (Bankr.D.N.M.1998).[7]

The cases widely reference the necessity for administrative efficiency and convenience and the majority of cases have concluded that the federal judgment rate of

---

5. Specifically, the Legislative History with respect to sections 726(a)(5) and 726(a)(6) provides that:

> Paragraph (5) provides that postpetition interest on prepetition claims is also to be paid to the creditor in a subordinated position. Like prepetition penalties, such interest will be paid from the estate *only if and to the extent that a surplus of assets would otherwise remain for return to the debtor at the close of the case.*
>
> This section also specifies that interest accrued on all claims (including priority and nonpriority tax claims) which accrued before the date of the filing of the title 11 petition is to be paid in the same order of distribution of the estate's assets as the principal amount of the related claims.
>
> Any surplus is paid to the debtor under paragraph (6).

(S.Rep. No. 989, 95th Cong., 2d Sess. 96–97 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5882–5883) (emphasis added).

6. *See* 28 U.S.C.1961.

7. One area not addressed by the parties is whether the issuance of the certificate of purchase operates to extinguish the mortgage lien. In other words, does the contract still govern after the foreclosure sale has occurred and the certificate of purchase has issued? *See, e.g., San Miguel Basin State Bank v. Oliver,* 748 P.2d 1342, 1344 (Colo.App.1987) (court concluded that deed of trust and note cased to govern interest rate after foreclosure sale had occurred and certificate of purchase issued); *See also, e.g., Green v. Hoefler,* 115 Colo. 287, 173 P.2d 208 (1946) (issuance of certificate of purchase operates to extinguish mortgage lien). The only document attached to the proof of claim was the "Revised Claim," a copy of the Public Trustee's Deed, a settlement statement, and a copy of a check and invoice. Ostensibly, the contract no longer exists and a state "legal rate" could be applied. However, in light of the unusual facts underlying this case and the Trustee's failure to fully raise this issue, the Court will address herein only the question of whether the "legal rate" is the contract rate or the federal judgment rate.

interest is the "legal rate" of interest. *See, In re Cardelucci,* 285 F.3d 1231, 1234 (9th Cir.2002) (in a Chapter 11 case, the Ninth Circuit concluded that to promote uniformity, the appropriate rate was the federal judgment interest rate); *see also, In re Beguelin,* 220 B.R. 94, 99 (9th Cir. BAP 1998) (the Ninth Circuit B.A.P. concluded that "fairness, equality, and predictability" required the use of the federal judgment rate of interest); *Bursch v. Beardsley & Piper,* 971 F.2d 108, 114 (8th Cir.1992) (the Eighth Circuit used the federal rate). In addition, it appears that the majority of legal authority has opined that, had Congress intended contract rates to apply, it would have used language other than the "legal rate," a term that usually refers to a statutory rate. 6 *Collier on Bankruptcy* ¶ 726.02[5] (Lawrence P. King ed., 15th ed. Rev.2003)

■ Indeed matters such as administrative efficiency and convenience must factor into the resolution of the issue of the "legal rate" of interest, but the Court must also consider and balance the equities in determining that rate of interest. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946). Here, the equities do not support application of an interest rate other than that as contracted by the parties. First, this is a small case, with a limited number of creditors, and the effort and difficulty in determining the contract rate and apply it is minimal. Second, although the amount payable is subject to ongoing variation, such as the accumulation of interest at a per diem rate and, possibly, additional attorney's fees (*infra* section IV(D)), there is no uncertainty sufficient to justify denying the Bank the

benefit of its bargain under these specific circumstances.[8] Third, *all* creditors are being paid in full and to allow interest at a rate lower than the rate contracted into by the parties, would reward an unscrupulous and indolent debtor.

## D. The Bank Is Entitled to an Award of Attorney's Fees

■ The final question before the Court is whether the Bank is entitled to its postpetition attorney's fees. There is a significant split of authority as to whether an unsecured creditor is entitled to payment of postpetition attorney's fees as part of its unsecured claim. The majority of courts have held that unsecured creditors are not entitled to collect postpetition attorney's fees, even if the contract between the parties allows for the same. *See, In re Hedged–Investments Associates, Inc.,* 293 B.R. 523 (D.Colo.2003); *In re Loewen Group Intern., Inc.,* 274 B.R. 427 (Bankr. D.Del.2002); *In re Sakowitz, Inc.,* 110 B.R. 268 (Bankr.S.D.Tex.1989); *see also, e.g., In re Fobian,* 951 F.2d 1149 (9th Cir.1991). A significant minority of courts have concluded that there is nothing in the Code that prohibits an unsecured creditor from asserting an unsecured claim for postpetition attorney's fees to which the creditor has a contractual right. In *New Power Company,* 313 B.R. 496 (Bankr.N.D.Ga. 2004); *In re United Merchants & Mfrs., Inc.,* 674 F.2d 134 (2d Cir.1982); *In re Byrd,* 192 B.R. 917 (Banrk.E.D.Tenn.1997); *Matter of 268 Ltd.,* 789 F.2d 674 (9th Cir.1986).

The Court is persuaded by the reasoning in *New Power.* The case involved a Chapter 11 bankruptcy case wherein a creditor filed a claim for allowance of at-

---

**8.** Under the Bankruptcy Code, claims may be estimated for various purposes and the difficulties present here are no greater than in such circumstances. *See, e.g.,* 11 U.S.C.

§ 502(c). Estimates of fees are customarily made in regard to the effort involved in closing cases and that, too, has presented no practical obstacles to case administration.

torney's fees and costs as an administrative expense, or, in the alternative, as a general unsecured claim. In *New Power*, the bankruptcy court held that postpetition attorney's fees *may* be included in a claim if the parties' contract provides for fees. 313 B.R. at 506. Specifically, the Court held:

Sections 501 and 502 govern the allowance of claims filed against the bankruptcy estate. Section § 101(5)(A) broadly defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Pursuant to § 502, when a proof of claim is filed, the claim will be deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a). In the face of an objection, the bankruptcy court must allow the claim unless one of nine specific exceptions applies. *Id.;* § 502(b). The exception most often applicable provides that a claim shall be disallowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." *Id.;* § 502(b)(1). Accordingly, the fact that a claim is contingent or unmatured is not grounds to disallow a claim unless that claim is for unmatured interest. *See* 11 U.S.C. § 502(b)(2); *see also In re Hemingway Transport, Inc.*, 954 F.2d 1, 8 (1st Cir. 1992) ("The difficulty or impossibility of estimation no longer constitutes a legitimate basis for disallowing any prepetition right to payment as a 'claim' against the estate."). The Court finds nothing within § 502 that would require the disallowance of an unmatured claim for attorney's fees.

Although § 502 directs the bankruptcy court to "determine the amount of such claim as of the date of the filing of the petition" and to allow the claim in such amount, § 502(c) provides that the court shall estimate for purposes of allowance of claims "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). When a creditor's right to payment for fees exists pre-petition, the right to payment constitutes a "claim," within the meaning of § 101(5)(A), albeit an unliquidated, unmatured claim that may be estimated for purposes of allowance, if necessary, pursuant to § 502(c). So long as the right to collect the fees existed pre-petition, the fact that the fees were actually incurred during the post-petition period is not relevant to the determination of whether the creditor has an allowable pre-petition claim for the fees. *See In re Hemingway Transport, Inc.*, 954 F.2d 1 (1st Cir. 1992) ("As most courts now recognize, the term 'claim' is broad enough to encompass an unliquidated, contingent right to payment under a prepetition indemnification agreement executed by the debtor, even though the triggering contingency does not occur until *after* the filing of the petition under the Bankruptcy Code."). Therefore, the Court does not agree with the reasoning of the majority decisions that § 502(b)'s requirement that the amount of the claim be determined as of the filing of the petition bars a claim for post-petition fees.

*Id.* at 507–08. The Court further concluded that there was nothing in 11 U.S.C. § 506(b) which, necessarily, precluded allowance of fees to an undersecured creditor. *Id.* at 508. Instead, section 506 is a provision that merely determines the claims which would be entitled to receive the preferential treatment accorded to secured creditors. *Id.* at 509.

The Court is persuaded that an unsecured creditor is not, completely and unqualifiedly, precluded from asserting a claim for postpetition attorney's fees if it is provided for by contract. Under the extraordinary circumstances of this case, the Court will allow the Bank its attorney's fees.[9]

## V. CONCLUSION AND ORDER

Based upon the above and foregoing, the Court concludes that the Trustee's Objection to the Claim of the Bank (Docket # 71) is DENIED. The Bank's deficiency claim in the principal amount of $80,726.72, together with postpetition interest through September 2, 2004 of $30,029.94, continuing interest until paid in full at 18% per annum, and postpetition attorney's fees of $12,043.80 is ALLOWED.

---

9. So as to not create an unsecured—or undersecured—creditor feeding frenzy, the facts and circumstances of this case are *extremely* unusual; *perhaps,* unprecedented. During this Judge's time on the bench, only a bare handful of Chapter 7 cases have resulted in a distribution to all creditors and a distribution to the debtor. Moreover, this case involves a debtor who concealed assets and a persistent creditor who helped the estate become solvent. It is the confluence of the various features of this case that result in the conclusions reached by the Court with respect to interest and attorney's fees.